734 F.2d 643
 15 Fed. R. Evid. Serv. 1821
 UNITED STATES of America, Plaintiff-Appellee,
v.
Willard M. CORBIN, Sr., Gary Bruce "Buddy" Ellison, Carl
Ellison, Duane Leslie Levingston, Thurman J.
Corbin, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sampson Brewer WEBB, David Brewer Webb and Robert Colin
Kelly, d/b/a Colin Kelly, Defendants-Appellants.
 Nos. 82-3185, 83-3086.
 United States Court of Appeals,
Eleventh Circuit.
 June 18, 1984.
 
 Clyde M. Taylor, Jr., Tallahassee, Fla., for Webbs.
 Clifford L. Davis, Tallahassee, Fla., for Kelly.
 W.N. Avera, Gainesville, Fla., for Corbins.
 Lewis M. Killian, Jr., Tallahassee, Fla., for G. Ellison.
 Lynn Alan Thompson, Tallahassee, Fla., for C. Ellison.
 Robert R. Hagaman, Naples, Fla., for Levingston.
 Lyndia P. Kent, Asst. U.S. Atty., Tallahassee, Fla., for U.S.
 Appeals from the United States District Court for the Northern District of Florida.
 Before RONEY, FAY and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 This is a direct appeal brought by eight defendants from their convictions in the district court for the Northern District of Florida, on federal drug conspiracy and perjury charges. We affirm.
 
 
 2
 The facts forming the basis of this prosecution were furnished in large part by two of the principal organizers of the conspiracy, Thomas and C.M. Stewart. The two testified that beginning in the spring of 1979, Thomas, C.M. and E.J. Stewart began to consider using a shrimp boat to haul a large quantity of marijuana from Colombia, South America to the United States. According to plan, E.J. Stewart arranged the purchase in Colombia, and in early July Thomas Stewart departed for South America in the shrimp boat.
 
 
 3
 Meanwhile, C.M. Stewart solicited the aid of appellants to offload the marijuana upon its arrival in the waters adjacent to Dixie County, Florida. The boat appeared off the shore of Dixie County in late July; two nights after its arrival the boat was offloaded. Appellant S.B. Webb acted as a lookout. Appellants Carl Ellison, Gary Ellison, Robert Colin Kelly, Duane Levingston and David Brewer Webb assisted in unloading marijuana off the shrimper and into smaller boats. They transported the marijuana to shore, where C.M. Stewart, together with appellants Thurman and Willard Corbin loaded the marijuana into trucks and hauled it away.
 
 
 4
 Several days later, the Stewarts determined that a number of the bales of marijuana were missing, and in an effort to locate them drew sketches of the offloading operation. These sketches were ultimately found by law enforcement officers in the trunk of a car rented by E.J. Stewart. C.M. Stewart was arrested in connection with the July 1979 incident in December 1980, and agreed to cooperate with the government as a witness in this case and as an informant in other unrelated transactions. A similar agreement was reached with Thomas Stewart. A grand jury investigation was subsequently commenced, in the course of which most of the defendants testified with respect to their involvement in the offloading incident.
 
 
 5
 All appellants, with the exception of Duane Levingston, were indicted on charges of conspiracy to possess a controlled substance in violation of 21 U.S.C. Secs. 841, 846; possessing with intent to distribute a controlled substance in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2; conspiracy to import a controlled substance in violation of 21 U.S.C. Secs. 952, 963; and importing a controlled substance in violation of 21 U.S.C. Sec. 952 and 18 U.S.C. Sec. 2. All appellants, with the exceptions of Gary and S.B. Webb, were further indicted for making false, material declarations before a federal grand jury in violation of 18 U.S.C. Sec. 1623. The appellants were convicted of all crimes charged, with the exceptions of S.B. Webb, who was acquitted of conspiracy to possess and possessing with intent to distribute, and Gary Ellison, who was acquitted of perjury. The defendants raise five objections on appeal: 1) that preindictment delay violated their constitutional right to due process; 2) that the trial court erred in declining to grant defendants' motions for severances and misjoinder; 3) that evidence was insufficient to sustain their convictions; 4) that testimony impugning the credibility of a key government witness was improperly excluded; and 5) that evidence of defendant Kelly's previous drug dealings was improperly admitted. We shall address the appellants' claims in order.
 
 Preindictment Delay
 
 6
 The incident giving rise to this prosecution occurred in July 1979. C.M. Stewart, a principal witness for the prosecution, was arrested in connection with the July 1979 smuggling operation in December 1980. In return for dropping all charges against him pertaining to that operation, C.M. Stewart agreed to testify against Corbin, et al., and to act as an undercover informant in a number of unrelated drug transactions. In January of 1981, C.M. Stewart's brother Thomas, the other principal prosecution witness in the instant case, likewise agreed to act as an undercover government informant. C.M. Stewart went undercover and did not become available as a witness until the end of 1981; Thomas was unavailable until April of 1982. The defendants in this case were indicted in July 1982.
 
 
 7
 Appellants contend that between the time that the government first became aware of the July 1979 smuggling incident, and the time defendants were indicted, four potential defense witnesses died. They argue that the preindictment delay was unreasonable, resulted in the prejudicial loss of some defense witnesses and the faded memories of others, and therefore violated the appellants' fifth amendment right of due process.
 
 
 8
 It is the law in this circuit that in order for preindictment delay to rise to the level of a due process violation, the defendant must make a twofold showing:
 
 
 9
 1) that the delay caused actual prejudice to the conduct of his defense; and
 
 
 10
 2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage.
 
 
 11
 United States v. Lindstrom, 698 F.2d 1154, 1157 (11th Cir.1983). We need not reach the question of whether the delay was intended to gain tactical advantage, because the defendants have made no showing that they were prejudiced by the delay.
 
 
 12
 Faded memories occasioned by preindictment delay do not alone satisfy the actual prejudice requirement. United States v. Ramos, 586 F.2d 1078 (5th Cir.1978); United States v. Hendricks, 661 F.2d 38, 40 (5th Cir. Unit A 1981). The death of witnesses during the preindictment period on the other hand may demonstrate the requisite prejudice, provided that the defendants are able to demonstrate that the evidence thereby lost could not be obtained through other means. United States v. Lindstrom, 698 F.2d 1154, 1158 (11th Cir.1983). In this case, however, the defendants have done no more than list the names of the prospective "witnesses" who died between July 1979 and July 1982. They have given no indication of what these witnesses would have been able to testify to and whether the substance of such testimony was otherwise unavailable. As a consequence, they have made no showing that they were actually prejudiced by the deaths of these individuals.
 
 
 13
 Moreover, at least two of the witnesses died in late 1980, prior to the time the government had brought C.M. Stewart into custody and obtained his cooperation. Given that the government's case rested in large part upon the testimony of C.M. Stewart, defendants cannot pretend that the loss of these two witnesses was due to a failure on the government's part to bring charges prior to the time of their deaths. Because defendants have been unable to make a showing of prejudice, their claims of unconstitutional preindictment delay fail.
 
 Motions for Severance
 
 14
 A. Severance of the possession and importation counts.
 
 
 15
 Appellants Carl and Gary Ellison argue that the trial court erred in denying their motions to sever counts one and two, conspiracy to possess and possessing with intent to distribute a controlled substance, from counts three and four, conspiracy to import and importing a controlled substance. The appellants insist that they wished to remain silent as to the possession counts, and testify as to the importation counts, but that the district court's refusal to sever the offenses effectively foreclosed them from doing so because they could not testify as to their complicity in the importation without suffering the adverse effects attendant to affirmatively expressing their wish to remain silent as to possession.
 
 
 16
 Rule 14 of the Federal Rules of Criminal Procedure, provides that:
 
 
 17
 If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.
 
 
 18
 Rule 14 determinations are subject to an abuse of discretion standard of review; a showing of "compelling prejudice" is required before a trial court's ruling will be overturned. United States v. Bright, 630 F.2d 804, 813 (5th Cir.1980).
 
 
 19
 The appellants here rely on Cross v. United States for the proposition that a defendant's wish to testify as to one count but not another may require a severance. 335 F.2d 987 (U.S.App.D.C.1964). As an initial matter, Cross limited its application to an accused who "wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence." Id. at 989 (emphasis supplied). The offenses in Cross were separate and distinct: robbery of a church, and robbery of a private residence, taking place on different days, in different places. In contrast, the importation and possession offenses involved here overlap as to time, place and evidence.
 
 
 20
 Moreover, Wright and Miller point out that arguments for severance made in reliance upon Cross usually fail "because the courts hold no need for severance arises until the defendant makes a convincing showing both that he has important testimony to give concerning one count and a strong need to refrain from testifying on the other count." C. Wright, A. Miller, Federal Practice and Procedure Sec. 222. See United States v. Outler, 659 F.2d 1306 (5th Cir.1981); United States v. Valentine, 706 F.2d 282 (10th Cir.1983).
 
 
 21
 In this case, the appellants have done no more than express a generalized desire to testify as to some counts but not others. They have not indicated what they would have testified to, and whether such testimony would have been of any particular importance; we are unable to conclude that defendants have demonstrated compelling prejudice resulting from denial of the motion for severance when we have been given no indication that the testimony allegedly forbidden as a result of the denial had any value.
 
 
 22
 B. Misjoinder as to the drug and perjury counts.
 
 
 23
 Unlike the Corbins, the Ellisons and Robert Kelly, who were indicted for both substantive drug offenses and perjury, appellants David and S.B. Webb were indicted only on the substantive drug charges. The Webbs urge that the perjury charges were based upon a series of acts or transactions entirely separate from those giving rise to the substantive drug charges, and that the failure to try the perjury and substantive offenses separately amounted to misjoinder.
 
 
 24
 Rule 8(b) of the Federal Rules of Criminal Procedure,[1] provides as follows:
 
 
 25
 (b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.
 
 
 26
 Unlike a motion for severance under Rule 14, a defendant need not demonstrate prejudice to prevail upon a claim of misjoinder under Rule 8(b), for if a defendant has been improperly joined, prejudice is presumed. United States v. Marionneaux, 514 F.2d 1244, 1248 (5th Cir.1975). Rule 8(b) determinations are thus subject to plenary review. United States v. Bright, 630 F.2d 804, 812 (5th Cir.1980).
 
 
 27
 The rule expressly permits joinder of defendants even though not every defendant is charged with every offense in the indictment. The relevant inquiry is whether all charges arose out of the same "series of acts or transactions." If the perjury indictments against Kelly, the Corbins and the Ellisons stemmed from a series of acts or transactions separate from that giving rise to the indictments on the substantive drug counts against the Webbs and the above-named defendants, there has been a misjoinder.
 
 
 28
 The question of what constitutes a series of acts or transactions has been before this Court a number of times. "Whether or not separate offenses are part of a 'series of acts or transactions' under 8(b) depends ... on the relatedness of the facts underlying each offense.... [W]hen the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper." [citation omitted]. When there is no "substantial identity of facts or participants between the two offenses, there is no 'series' of acts under Rule 8(b)."
 
 
 29
 United States v. Welch, 656 F.2d 1039, 1049 (5th Cir.1981). Of the eight defendants in this appeal, seven were indicted and convicted on two or more of the substantive drug charges, and six were indicted and five convicted on one or more counts of perjury. Proof of perjury required proof of knowledge of the substantive drug offenses, because the allegedly perjured testimony was uttered in response to questions concerning the drug offenses. There was thus the substantial identity of facts and participants necessary for proper joinder. United States v. Anderson, 642 F.2d 281 (9th Cir.1981) (Defendants and offenses were properly joined in prosecution for tax evasion and conspiracy to possess and distribute heroin, where the defendant's income was falsely reported to the IRS in order to conceal the proceeds of the drug transactions).
 
 
 30
 C. Severance of appellant Levingston.
 
 
 31
 Levingston was indicted and convicted of perjury only. He argues that it was highly prejudicial to deny him a motion for severance from the other defendants, all of whom were charged with substantive drug offenses. As previously noted, review of rulings on motions for severance under Rule 14 are subject to an abuse of discretion standard of review. That standard will be met only if denial of the motion for severance resulted in compelling prejudice to the defendant. It must be demonstrated that as a result of trying the defendants jointly, the jury was rendered incapable of independently evaluating the evidence against each defendant. United States v. Bright, 630 F.2d 804, 813 (5th Cir.1980). The prejudice flowing from a joint trial must be "clearly beyond the curative powers of a cautionary instruction." United States v. Becker, 569 F.2d 951, 964 (5th Cir.1978).
 
 
 32
 Levingston argues that there is no way a juror could separate the evidence introduced against him from that introduced against the others. As he puts it: "All Defendants were figuratively 'in the same boat.' No particular circumstance separated them. To a man, in the jurors' minds, the Defendants would sink or swim together." But that is where the appellant is wrong. Appellants Kelly, Willard Corbin, Thurman Corbin, David Webb and Carl Ellison were convicted of all offenses for which they were indicted. On the other hand, S.B. Webb was indicted but acquitted on charges of conspiracy to possess and possessing with intent to distribute a controlled substance, and Gary Ellison was indicted but acquitted on perjury charges. "In determining on appeal whether the jury was in fact confused, the court will look to the verdict. Convictions will invariably be sustained if it may be inferred from the verdict that the jury meticulously sifted the evidence as where it acquits on certain counts." United States v. Kabbaby, 672 F.2d 857, 861 (11th Cir.1982). The jury's verdict finding some defendants guilty on certain counts but not others, makes clear that the jury independently evaluated the evidence against each defendant, and was not intent upon having the defendants "sink or swim together." Levingston has been unable to demonstrate the requisite prejudice from denial of his motion for his severance; the order of the district court is therefore affirmed on this point.
 
 Sufficiency of the Evidence
 
 33
 Various appellants challenge the sufficiency of the evidence as to all offenses they were convicted of committing. In reviewing sufficiency of the evidence claims, we must examine the record in the light most favorable to the government, and in that light determine if a reasonable juror could find the defendants guilty beyond a reasonable doubt. United States v. Miller, 693 F.2d 1051 (11th Cir.1982); United States v. Michel, 588 F.2d 986, 994 (5th Cir.1979). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence." United States v. Bell, 678 F.2d 547 (5th Cir. Unit B 1982).
 
 A. The Drug Offenses
 
 34
 The standards governing sufficiency of the evidence review in drug conspiracy cases was well summarized in the recent decision of United States v. Badolato, 701 F.2d 915, 919-20 (11th Cir.1983):
 
 
 35
 Fortunately, or unfortunately as the case may be, this circuit has had the opportunity to develop a substantial body of case law with respect to the requirements necessary to sustain a conviction for drug conspiracy. The most basic element of such a conspiracy is an agreement between two or more persons to violate federal narcotic laws.... What the government must demonstrate is that a conspiracy existed, that the defendant had knowledge of it, and that he or she voluntarily became a part of it [citations omitted]. It is also clear that the existence of a drug conspiracy may be demonstrated by circumstantial evidence such as inferences from the conduct of the defendant or the circumstances indicating a scheme or plan [citations omitted]. Moreover, the requirement of knowledge of the conspiracy agreement refers simply to knowledge of the essential objective of the conspiracy [citations omitted]. To be found guilty, a defendant need not have knowledge of all the details of the conspiracy, and may play only a minor role in the total operation.
 
 
 36
 1) Possession with intent to distribute and conspiracy to possess.
 
 
 37
 It cannot seriously be disputed that the appellants in this case evinced a common purpose to violate narcotics laws. Each defendant convicted of possession offenses actively participated in offloading the marijuana from the shrimper onto smaller boats and from those boats into trucks.
 
 
 38
 Thurman Corbin appeared on the night the marijuana was to be offloaded as he was supposed to (v. 7 pp. 41-42), acted as a lookout and used his pickup truck to haul marijuana from the offload site (v. 7 pp. 42, 48). Willard Corbin told C.M. Stewart that "I know what is going on and I want in" (v. 7 p. 24), assisted in loading marijuana into his pickup truck, and hauled it away (v. 7 pp. 36, 46). C.M. Stewart solicited Carl Ellison to assist him in unloading the shrimper, and Ellison agreed (v. 7 p. 23); Ellison subsequently used his boat to assist in bringing the marijuana to shore (v. 8 pp. 16-17). Carl Ellison also told Stewart that he "had hired Buddy (Gary Ellison) to help him" (v. 7 p. 23). Gary Ellison in turn assisted his brother Carl in loading the marijuana from the shrimper onto a smaller boat (v. 8 pp. 16-19). Robert Colin Kelly agreed to participate in the offloading at the request of S.B. Webb (who was convicted of importing and conspiracy to import, but was acquitted on the possession counts), utilized his own boat in transporting marijuana to shore and withheld 10 bales of marijuana to secure his payment (v. 7 pp. 32, 56, 111; v. 8 pp. 20-22). David Brewer Webb was likewise recruited by S.B. Webb, and assisted Kelly, Carl and Gary Ellison in offloading marijuana from the shrimper onto smaller boats (v. 7 pp. 32-33). Finally, C.M. Stewart testified that Carl and Gary Ellison, and Willard and Thurman Corbin had participated in a similar offloading venture several months prior to the incident upon which appellants' convictions were based (v. 7 pp. 75-77).
 
 
 39
 From the evidence recounted above, it would be infinitely reasonable for a juror to infer that the participants in the offloading operation had actual knowledge that the purpose and scope of the conspiracy included possessing and distributing marijuana in the United States. Armed with such knowledge, the appellants acted in a manner that unmistakably forwarded the conspiracy, and that is enough to sustain their convictions for possession with intent to distribute a controlled substance and conspiracy to do the same. United States v. Lopez-Llerena, 721 F.2d 311 (11th Cir.1983). The appellants' arguments to the contrary, based upon claims that their respective roles in the overall conspiracy were relatively insignificant, are unavailing, for as the Fifth Circuit has noted, a defendant cannot "escape criminal responsibility on the grounds that he did not join the conspiracy until well after its inception [citations omitted]; or because he plays only a minor role in the total scheme." United States v. Alvarez, 625 F.2d 1196, 1198 (5th Cir.1980) (en banc).2) Importation and conspiracy to import.
 
 
 40
 The appellants contend that even if the evidence supports their convictions for conspiracy as to possession with intent to distribute, the evidence was insufficient with respect to the importation counts. The defendants argue that their participation in the conspiracy did not commence until after the importation was completed, that they were involved, if at all, in a separate and distinct conspiracy to possess and distribute marijuana, and that their complicity in the offloading operation did not furnish evidence that they knew of or participated in the separate importation conspiracy.
 
 
 41
 Importation is a " 'continuous crime' that is not complete until the controlled substance reaches its final destination point." United States v. Gray, 626 F.2d 494, 498 (5th Cir.1980); United States v. Reynolds, 511 F.2d 603, 607 (5th Cir.1975); United States v. Guajardo, 508 F.2d 1093, 1095 (5th Cir.1975). The importation was thus still in progress at the time the marijuana was offloaded. By offloading the marijuana, then, appellants furthered the conspiratorial objective of importing and possessing with intent to distribute the marijuana. In short, there were not two separate and distinct conspiracies, but one, whose purpose encompassed bringing a controlled substance into the United States and distributing it there for profit:
 
 
 42
 The plan necessarily required the assistance of many persons performing varied functions; yet there was still only one overall agreement between the parties to perform functions necessary to and in furtherance of the illegal common purpose. This makes out one conspiracy. [citations omitted]. The plan does not become several plans simply because some members were cast in more vital roles than others or because certain members performed only a single function.
 
 
 43
 United States v. Michel, 588 F.2d 986, 995 (5th Cir.1979).
 
 
 44
 From the evidence adduced at trial, there was more than a sufficient basis for a reasonable juror to conclude that each of the appellants participated in the conspiracy with knowledge of its general objective. Thomas Stewart testified that he brought a shrimping boat full of marijuana from Colombia to the United States, which the appellants unloaded. The situation is thus drastically different from that in United States v. Soto, 591 F.2d 1091 (5th Cir.1979), or United States v. Maslanka, 501 F.2d 208 (5th Cir.1974), the cases relied on by appellant Carl Ellison. In those cases, convictions for importation and conspiracy to import were reversed because the government failed to furnish sufficient proof that the controlled substance at issue had in fact been imported. Here it was uncontroverted that the marijuana came from Colombia, and it would be reasonable for the jury to conclude that the appellants knew as much, given their coordinated efforts to offload the boat in close conjunction with those physically responsible for bringing the marijuana into the country. United States v. Reynolds, 511 F.2d 603 (5th Cir.1975). Once it is demonstrated that a defendant joins an ongoing conspiracy with knowledge of its general purpose and scope, he is bound by all that has gone on before in the conspiracy, even if it is unknown to him. United States v. Wilson, 500 F.2d 715, 727 (5th Cir.1974); United States v. Knight, 416 F.2d 1181, 1184 (9th Cir.1969).
 
 
 45
 In support of a contrary conclusion, appellants rely almost exclusively upon United States v. Alfrey, 620 F.2d 551 (5th Cir.1980). There, a defendant was convicted of possessing a controlled substance with intent to distribute, importing a controlled substance, and conspiracy as to both. The only evidence against him was that at the time of his arrest, he was on board a vessel loaded with marijuana anchored in Tampa Bay, and had attempted to evade detection. The Fifth Circuit upheld his conviction for possession with intent to distribute, but reversed as to the importation and conspiracy counts, concluding that in light of his being in street clothes at the time of his arrest, a reasonable hypothesis of innocence was that he had boarded the trawler after it entered the United States, without knowing of or joining a conspiracy.
 
 
 46
 Appellants' reliance is sorely misplaced. First, it must be remembered that our circuit has expressly rejected the "reasonable hypothesis of innocence" standard under which Alfrey was decided. United States v. Bell, 678 F.2d 547 (5th Cir. Unit B 1982) (en banc). A jury's decision to reject a hypothesis of innocence in favor of one of guilt will be upheld, provided that there is sufficient evidence to support a finding of guilt beyond a reasonable doubt. More important, however, there is far more evidence in this case than in Alfrey, of the defendants' knowledge of and involvement in a conspiracy. Unlike Alfrey, where the defendants' unexplained presence and furtive behavior were the only evidence against him, here the evidence indicates that the appellants were either recruited or volunteered to participate in the offloading, assembled at a prearranged time, and took an active part in offloading the marijuana. The Alfrey decision is thus inapposite to the case at bar, and does not compel reversal here.[2] We therefore conclude that the evidence was sufficient to support appellants' convictions for importing and conspiracy to import a controlled substance.
 
 B. Perjury Convictions
 
 47
 Appellants Carl Ellison and Robert Colin Kelly challenge the sufficiency of the evidence supporting their convictions for perjury under 18 U.S.C. Sec. 1623. That statute provides in part:
 
 
 48
 (a) whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years or both.
 
 
 49
 At the grand jury proceedings, Carl Ellison was asked: "Did you discuss with C.M. Stewart using the Santa Maria to offload a large vessel of cannabis," to which he replied, "I didn't discuss nothing like that with him." At trial, C.M. Stewart testified that "I went over and talked to Carl and asked him if he would be interested in helping unload the boat ... He said, he would." Ellison argues that his statement was literally true, in that in his discussion with C.M. Stewart, the "Santa Maria" was not mentioned.
 
 
 50
 The appellant is grasping at straws. Stewart testified that he and Ellison discussed offloading a shrimping boat filled with marijuana. Stewart further testified that several months prior to this conservation, Ellison had used his boat to assist Stewart in offloading another shrimping boat of marijuana. Thus when Stewart and Ellison subsequently discussed unloading a similar shrimping boat in the operation at issue in this case, it would be safe to infer that the parties to the conversation understood that Ellison would help unload the shrimper by means of his boat, which happened to be the Santa Maria. The appellant's statement that he "didn't discuss nothing like" using the Santa Maria to unload a large vessel of cannabis, is thus not an unresponsive but literally true answer to the examiner's question, Bronston v. United States, 409 U.S. 352, 358, 93 S.Ct. 595, 600, 34 L.Ed.2d 568 (1973); rather it is patently false. See United States v. Williams, 552 F.2d 226 (8th Cir.1977).[3]
 
 
 51
 Appellant Robert Colin Kelly also challenges his perjury conviction. At the grand jury proceedings, he responded "no" to the question of whether he had assisted C.M. Stewart in "off-loading cannabis ... from a large ship." Kelly claims first that his statement was immaterial because the jury could not have been misled, given the abundance of other evidence demonstrating that he was involved in the offloading, and second that his statement was not knowingly false because he did not regard the shrimping boat as a "large ship."
 
 
 52
 Under 18 U.S.C. Sec. 1623, knowingly false statements must be "material" in order to sustain a conviction for perjury. A statement is material if it is capable of influencing the grand jury's investigation. United States v. Dudley, 581 F.2d 1193 (5th Cir.1978). To the extent that truthful answers might assist the grand jury's investigation, false statements are material notwithstanding an abundance of evidence facilitating access to the truth. United States v. Richardson, 596 F.2d 157, 165 (6th Cir.1979).
 
 
 53
 Appellant Kelly's response was material. A truthful answer as to his involvement in the offloading operation obviously would have simplified and thus assisted the grand jury's investigation of him, regardless of the fact that other witnesses established his complicity. It would be preposterous to hold that as the evidence against a defendant mounts, he acquires a license to lie under oath.
 
 
 54
 We further hold that the reference to a "large ship," was not so vague or ill-defined that the jury could not reasonably find that Kelly understood the phrase to refer to the shrimping boat. United States v. Caucci, 635 F.2d 441, 444-45 (5th Cir. Unit B 1981). Consequently, the appellants' convictions for perjury are affirmed.
 
 Exclusion of the Pattersons' Testimony
 
 55
 On cross-examination, defense counsel asked C.M. Stewart if he had shot one Herbert Patterson in January of 1980, and whether his "deal" with the government would immunize him from prosecution in connection with such an incident. Stewart responded no to both questions. The defense later proffered the testimony of Herbert Patterson, who stated that in late 1979 he had found a number of large plastic bags in Stewart's backyard that were later proved to conceal bales of marijuana (although Patterson did not know it was marijuana at the time); that Stewart had seen Patterson when he discovered the bags; that after his arrest and subsequent release from custody Stewart told Patterson to keep his nose out of Stewart's business; and finally that Stewart shot Patterson in the chest, ostensibly for reasons related to Patterson's discovery of the bags in Stewart's backyard. Patterson's wife also offered testimony corroborating her husband's story. The trial court declined to admit the proffered testimony, and the defendants challenge that ruling on appeal.
 
 
 56
 Rule 608(b) of the Federal Rules of Evidence governs admission of extrinsic evidence to attack credibility, and provides that:
 
 
 57
 Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness
 
 
 58
 (1) concerning his character for truthfulness or untruthfulness, or
 
 
 59
 (2) concerning the character for truthfulness of another witness as to which character the witness being cross-examined has testified.
 
 
 60
 "To the extent that it is ever admissible, extrinsic evidence to attack credibility is usually subject to the discretion of the trial judge." United States v. Dinitz, 538 F.2d 1214, 1224 (5th Cir.1976). As a general matter, a party's right to impugn the character for truthfulness of an opposing party's witness is limited to questioning the witness on cross-examination. When such cross-examination testimony goes into evidence " 'the examiner must take his answer,' and the examiner cannot offer impeachment testimony." United States v. Cohen, 631 F.2d 1223, 1226 (5th Cir.1980). An exception to this rule has developed, however, where the extrinsic testimony proffered would tend to show that the witness is biased against the accused.[4]
 
 
 61
 In this case, there is no evidence linking either the marijuana found in Stewart's yard or the shooting incident, to the July 1979 offloading operation. The proffered testimony could conceivably be relevant, however, if Stewart entertained the belief that in return for his cooperation, any charges in connection with the shooting would be dropped. If this were the case, he might arguably see himself as having a vested interest in a successful prosecution of the defendants, and thus would be biased in his testimony against them.
 
 
 62
 The problem is that no evidence in the proffer or elsewhere in the record indicates that Stewart had reason to believe that his arrangement with the government would immunize him from prosecution for the shooting. Stewart testified that it would not, and while it is true that Stewart had not been indicted in relation to the incident as of the time of trial, that alone does not suggest that a deal had been struck wherein the shooting would be among the charges dropped. It may well be that the evidence was seen as insufficient to proceed with prosecution: Patterson stated that he was certain his assailant was C.M. Stewart, yet conceded that the incident occurred at night and that he only saw his assailant's silhouette; moreover, on cross-examination Patterson acknowledged that he did not inform authorities that he suspected C.M. Stewart was his assailant until several months after the incident.
 
 
 63
 Absent a showing that the shooting incident would give Stewart a reason to bias his testimony against the defendants, the proffer falls squarely within Rule 608. United States v. Harris, 542 F.2d 1283, 1302 (7th Cir.1976). While Patterson's statement that Stewart had shot him contradicted Stewart's testimony on that point and thereby called into question Stewart's character for truthfulness, the rule expressly limits the defendants' avenues of inquiry into the witnesses' character to posing questions during cross-examination, which the defendants were allowed to do. United States v. Wood, 550 F.2d 435, 441 (9th Cir.1976) (proffered testimony by Mexican police officer that informant was wanted for auto theft in Mexico, contrary to informant's testimony on cross-examination, was inadmissible under Rule 608). The district court did not abuse its discretion in declining to admit the proffered testimony.
 
 Admission of Officer Culpepper's Testimony
 
 64
 Officer John Culpepper testified, over the objections of defendants Kelly, David and S.B. Webb that after marijuana was found in Kelly's home in late 1980, Kelly told Culpepper that he had brought several loads of marijuana into the country on previous occasions, and offered Culpepper $35,000 if he would not turn the marijuana over to authorities for analysis. The appellants argue that this evidence should have been excluded under Rules 403 and 404 of the Federal Rules of Evidence.
 
 Rule 404(b) provides that:
 
 65
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 66
 The government argues that Culpepper's testimony was properly admitted as evidence of intent or knowledge and we agree. Evidence of extrinsic offenses as may be probative of a defendant's state of mind are admissible unless the defendant affirmatively takes the issue of intent out of the case. United States v. Holman, 680 F.2d 1340 (11th Cir.1982). Culpepper's testimony was certainly probative of Kelly's state of mind, in that it indicated his comprehension of the scope of the conspiracy to import and distribute marijuana, and his intent to participate in it. Furthermore, the issue of Kelly's intent was anything but taken out of the case; indeed, Kelly vigorously argues that evidence of intent was insufficient to sustain his convictions. Culpepper's testimony was therefore admissible under Rule 404.
 
 
 67
 Notwithstanding that the testimony was otherwise relevant and admissible under Rule 404, the question remains whether pursuant to Rule 403 the probative value of such testimony was so outweighed by its prejudicial effect that the trial court abused its discretion in allowing the testimony into evidence. We find the case of United States v. Holman so close in its facts as to control the decision in this case. 680 F.2d 1340, 1348-50 (11th Cir.1982). Holman involved a prosecution for possession with intent to distribute and conspiracy to possess with intent to distribute marijuana. Over objection, a government witness testified as to three previous attempts of the defendants to smuggle marijuana into the country by means of fishing boats.
 
 
 68
 The court held that the evidence was properly admitted under Rule 403. Its reasoning in reaching that conclusion is worth quoting at length:
 
 
 69
 In measuring the probative value of the evidence, the judge should consider the overall similarity of the extrinsic and charged offenses. If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence. Of course, equivalence of the elements of the charged and extrinsic offenses is not required. But the probative value of the extrinsic offense correlates positively with its likeness to the offense charged. Whether the extrinsic offense is sufficiently similar in its physical elements so that its probative value is not substantially outweighed by its undue prejudice is a matter within the sound discretion of the trial judge. The judge should also consider how much time separates the extrinsic and charged offenses: temporal remoteness depreciates the probity of the extrinsic offense. E.g., United States v. Carter, 516 F.2d 431, 434-35 (5th Cir.1975).
 
 
 70
 582 F.2d at 915.
 
 
 71
 The evidence admitted in the case at bar was of conduct nearly identical to the offenses charged at trial. The occurrence of the three prior smuggling incidents during the first part of 1979 was extremely close in time to the July '79 episode for which the appellants were tried. These factors militate in favor of a finding that the probative value of the evidence of prior similar acts exceeded its prejudicial effect. We therefore conclude that the trial judge's admission of the evidence of prior bad acts on the basis of its relevancy and probative value was well within his broad discretion.
 
 
 72
 For the same reasons, we conclude that Officer Culpepper's testimony was properly admitted in this case.
 
 Conclusion
 
 73
 Having reviewed each of the appellant's contentions in detail, we conclude that the judgment of the district court is in all respects affirmed.
 
 
 74
 AFFIRMED.
 
 
 
 [1]
 At first blush, Rule 8(a), governing joinder of offenses might appear the more applicable; however, our case law has made it clear that when more than one defendant is tried in a given action, all claims of misjoinder are properly addressed under Rule 8(b). United States v. Marionneaux, 514 F.2d 1244, 1248 (5th Cir.1975)
 
 
 [2]
 The appellants point to language in Alfrey that suggests the crime of importation ends as soon as the contraband enters the country, and argue that because their involvement in the conspiracy did not begin until after the marijuana was in the United States, they cannot be found guilty of importation. As previously noted, the crime of importing a controlled substance is a continuing one that ends only after the contraband reaches its final destination in the United States. United States v. Reynolds, 511 F.2d 603 (5th Cir.1975). Any suggestion in Alfrey to the contrary is purely dicta, for that case held simply that there was insufficient evidence that the defendant was a member of the conspiracy to hold him responsible for acts committed by its members
 
 
 [3]
 In Bronston, after the defendant truthfully answered that he did not own a Swiss bank account, he was asked if he had owned one in the past, to which he responded, "The company had an account there for about six months, in Zurich," which was also true albeit unresponsive to the question of whether he ever had a personal account there, which he had. The Supreme Court held that while the answer may have been "shrewdly calculated to evade," "special problems arising from the literally true but unresponsive answer are to be remedied through the questioner's acuity and not by a federal perjury prosecution." 409 U.S. at 362, 93 S.Ct. at 602. In contrast, the defendant in Williams responded "no" to the question of whether he had ever taken any money for his own use "in exchange for the release of liens," when in fact he had on one occasion. The Eighth Circuit rejected his contention that under Bronston his response was literally true in that he had taken money in exchange for "a lien" but not "liens," concluding that in context, the defendant understood the use of the plural to include the singular. We likewise conclude that in context, Ellison understood that the question asked referred to his conversation with C.M. Stewart in which he agreed to unload the shrimper, a conversation to which Ellison untruthfully disavowed all knowledge
 
 
 [4]
 A thorough discussion of the exception is contained in Johnson v. Brewer, 521 F.2d 556 (8th Cir.1975), particularly at note 13