**UNITED STATES of America**

v.

**S. Sam CALDWELL, et al.**

**Crim. No. CR 84–32.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 27, 1984.

Robert S. Stubbs, Jere W. Morehead, Asst. U.S. Attys., Atlanta, Ga., for plaintiff.

Theodore S. Worozbyt, William A. Morrison, Atlanta, Ga., for Caldwell.

Christopher A. Townley, Rossville, Ga., for Brown.

W. Emory Walters, Ocilla, Ga., for Coarsey.

Mary S. Donovan, Federal Defender Program, Inc., Atlanta, Ga., for Buffington.

Murphy C. Miller, Atlanta, Ga., for Flanigan.

Guy E. Davis, Jr., Atlanta, Ga., for Suggs.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the court on motions for severance filed by Defendants Flanigan, Suggs, Buffington and Brown. For the reasons hereinafter stated, the court does not grant severance of any individual defendant, but instead elects to separate counts of the indictment for purposes of trial. Counts 3, 4, 13 and 14 will first be tried together. Immediately thereafter, a trial of Counts 5 through 12 will be held. Finally, Counts 1 and 2 will be tried together. A discussion of the reasons for previously granting Defendant Coarsey's severance motion will be included in this order.

A. *Severance Under Rule 14, F.R. Crim.P.*

1. Factual and Procedural Background

Broadly speaking, this case involves alleged fraud of an insurance company, extortion of employees of the Georgia Department of Labor, and perjury. At relevant times, Defendant S. Sam Caldwell was Commissioner of the Department of Labor for the State of Georgia. The other De-

fendants all held managerial or supervisory positions within the Department of Labor.

Count 1 alleges that all Defendants except Austin P. Coarsey were associated at relevant times with a RICO enterprise,[1] and that such Defendants "did unlawfully and knowingly conduct and participate, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity." Count 1 then identifies a number of racketeering, or "predicate" acts. For example, it alleges 20 instances in which various Defendants, except for Coarsey and Flanigan, attempted to or did extort money from employees of the Department of Labor for use in Mr. Caldwell's election campaign. These 20 instances are also among the over 150 alleged acts of extortion which the government contends constituted part of two conspiracies to commit extortion, alleged as separate substantive offenses in Counts 3 and 4 of the indictment.[2]

Count 1 further alleges, as a RICO "predicate" act, that Defendants Caldwell and Flanigan committed mail fraud when they allegedly devised and undertook a scheme to defraud an insurance company which had insured a boat belonging to Mr. Caldwell. This alleged mail fraud, along with related charges of destruction of a vessel, is set forth as seven separate substantive offenses in Counts 5 through 12 of the indictment. The Defendants in Counts 5 through 12 are Mr. Caldwell and Mr. Flanigan.

Counts 13 and 14 allege that Defendant Nancy Sue Brown committed perjury while testifying before the grand jury in the Northern District of Georgia. Counts 15 through 19 allege that perjury was committed during the grand jury investigation by Defendant Austin P. Coarsey. The claimed acts of perjury are not alleged as predicate acts for RICO purposes.

Finally, Count 2 alleges that all Defendants, except Defendant Coarsey, conspired

---

1. The indictment does not identify who or what constituted the enterprise, except to state that it is a group of past and present Department of Labor employees.

2. The two conspiracies to commit extortion are also alleged as two of the predicate acts under Count 1.

to commit a RICO violation. Specifically, Count 2 alleges that the Defendants "... did knowingly and unlawfully conspire ... to conduct and participate, directly and indirectly, through a pattern of racketeering activity, in the affairs of an enterprise, the activities of which affected interstate and foreign commerce...."

After reviewing the briefs filed by various Defendants in support of motions for severance, the court held a reported in-chambers conference on Friday, September 21, 1984 to discuss with counsel for all parties the possibility of splitting up the indictment for purposes of trial. The court explained it was considering the possibility of splitting the indictment for trial, stating concern about the possibility of juror confusion which might cause prejudice to individual defendants. It noted the government's announced intention to call 300 witnesses, and the failure of counsel for the parties to reach any pre-trial agreements which might simplify trial of the case. The court noted the government has asked Defendants to make numerous stipulations concerning apparently insignificant aspects of the case, but Defendants have declined. One Defendant states that this is because the government has refused to reveal the names of any of its witnesses.[3] Finally, the court noted that the government's estimate placed the length of the trial at 6 to 8 weeks.

The government objected to any division of the indictment for purposes of trial. Defendant Caldwell stated he was indifferent. Defendant Brown urged that counts 5 through 12, which do not involve her, be tried separately. However, counsel stated she would not object to the perjury charges against her being tried along with the other counts in which she is charged with extortion and RICO violations. Defendant Buffington urged that Counts 5 through 12 be tried separately. Defendant Suggs stated that the extortion counts should be tried separately from the insurance fraud counts.

The court noted that count 3 of the indictment, which alleges that all Defendants, except Coarsey and Flanigan, conspired to commit extortion in violation of 18 U.S.C. § 1951, does not set forth the acts of extortion which Defendants allegedly conspired to commit. In order to assist the court in ruling on the motions for severance, it directed the government to file a written list of each act of extortion which, pursuant to Count 3, the named Defendants allegedly conspired to commit. Additionally, the court directed the government to identify, with respect to each such act of extortion, the name of any Defendant who directly participated in such extortion or attempt to extort.

On Monday, September 24, 1984, the government timely filed a written list. However, the list is labeled as a "witnesses/victims" list. It contains a list of approximately 150 names. The cover letter appended to the list states "I want to make it clear that the list of victims is not a complete list of witnesses, but only those victims we understood you requested us to provide."

The court did not direct that a witness list be filed. Rather, it directed the government to file the information described above. The court could infer that each name on the list (other than the Defendants' names) represents an alleged act of extortion within the conspiracy alleged in Count 3. However, it is unnecessary to proceed by inference. The government is DIRECTED to clarify its position in writing immediately. Do the names represent a list of each and every act of extortion which Count 3 alleges the Defendants conspired to commit? Does each name represent a claimed incident of extortion or attempted extortion?

---

3. Indeed, the government has objected to the Magistrate's recommendation that Jencks Act material be provided two business days before the start of the trial, stating that the court has no power to require such information to be furnished in advance of the trial. *See* "United States' Objection to Magistrate's Recommendation and Memorandum in Support Thereof," filed May 7, 1984.

### 2. The Government's Request for an *In Camera* Conference

Attached to the government's list of "witnesses/victims" is a letter containing a request for an *in camera* conference with the court to explain the theory of the government's case.

█ At this point, the court is unconvinced that an *in camera* conference is necessary. The indictment generally explains the theory of the government's case; to the extent it does not, the court sees no reason why, in this white collar fraud case, defense counsel should not have the benefit of any necessary explication. The request is hereby DENIED.

### 3. Severance Based on Prejudice Under Rule 14

█ Rule 14, F.R.Crim.P., states in relevant part as follows:

> If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Rule 14 requires the trial court to balance the right of defendants to a fair trial absent the prejudice that may result from joint trials, against the public's interest in efficient and economic administration of justice. *United States v. Hewes*, 729 F.2d 1302, 1318 (11th Cir.1984). Severance under Rule 14 is within the trial court's discretion. *See United States v. Corbin*, 734 F.2d 643, 649 n. 1 (11th Cir.1984); *Hewes, supra* at 1318.

█ Turning now to the motions for severance, the court finds that given Defendant Brown's willingness for the perjury charges against her to be tried together with the RICO and *extortion* charges, there is no merit in separate trials for any of the remaining Defendants.[4] Severance is not required to protect individual defendants from "prejudicial spill-over" given the court's decision to separate counts of the indictment for trial. Moreover, if any Defendant is severed from counts 1 through 3, then all of the government's proof would simply have to be duplicated in a separate trial pertaining to that Defendant.

The court does, however, elect on its own motion to separate portions of the indictment for purposes of trial. It finds this is necessary to protect individual Defendants from unfair prejudice. Given the fact that a number of counts allege conspiracy or conspiracy-like offenses involving subtle legal distinctions (*e.g.*, RICO, conspiracy to commit RICO, conspiracy to commit extortion both as a RICO predicate act and as separate substantive offenses), plus the large number of witnesses, and multiple defendants not involved in all conspiracies alleged, the court finds that the interests of Defendants would not be adequately protected by a proper charge of the law. The court's concern is not prejudice emanating from "guilt by association"; it is prejudice which would likely accrue from the sheer inability of the jurors to assimilate and correlate applicable items of evidence to the numerous conspiracy or conspiracy-like offenses alleged. By splitting the indictment for trial, the risk of juror confusion can be substantially reduced.[5]

As stated to counsel at the September 21st conference, the counts of the indictment in this case may be conceptually compared to different sized boxes which fit within each other. The largest, outer box is Count 2, the conspiracy to commit a RICO violation. Within that is Count 1, the RICO charge. Within the RICO box are two smaller boxes: the substantive violations alleged in Counts 3 and 4 (the counts alleging conspiracy to extort money from employees of the Department of Labor) and counts 5 through 12 (the counts alleging acts of mail fraud and destruction of

---

4. Defendant Coarsey's motion for severance has previously been granted. *See* discussion in next section of this order.

5. It seems doubtful that this procedure will shorten overall trial time.

vessel involving the company which insured Mr. Caldwell's boat).[6] Along side, and separate from this set of "boxes" are the perjury charges against Mrs. Brown and Mr. Coarsey.

■ The court finds that a common sense division of the indictment would be to first try the predicate act counts which involve common defendants. Counts 3 and 4 each allege conspiracies to commit similar extortionate acts. They may be appropriately tried together. The court further finds that the perjury charges against Mrs. Brown, an alleged co-conspirator in Count 3, may be tried together with the extortion conspiracy counts given the absence of objection by Mrs. Brown, and the relative legal simplicity of her perjury charges.

A second, logical division is represented by Counts 5 through 12, the "predicate act" counts alleging fraud of an insurance company and destruction of a vessel by Defendants Caldwell and Flanigan.

Finally, the RICO/conspiracy to commit RICO counts can appropriately be tried together. While this trial will undoubtedly require some repetition of evidence from trials one and two, the resolution of the predicate act counts should clarify and expedite proper resolution of these charges.

The court emphasizes that division of counts of an indictment for trial is rarely necessary. Even RICO, with its inherent legal complexity, should infrequently require separate trial of those predicate acts set forth as separate substantive counts of the indictment. The difficulty in this case arises from the numerosity of the conspiracy or conspiracy-like offenses alleged (5 substantive counts; two RICO predicate acts), the subtle legal distinctions which exist between RICO, conspiracy to commit RICO, and other conspiracy charges, and the number of witnesses involved.

**6.** This analogy is not totally precise. Counts 3 and 4, allege two separate conspiracies to commit over 150 acts of extortion. Some of these acts of extortion and both of the alleged conspir-

**B.** *Misjoinder under Rule 8(b)*

■ Several of the Defendants have also argued that the charges against them should be severed because they were not properly joined under Rule 8, F.R.Crim.P. Rule 8(b) states as follows:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

When more than one defendant is tried in a given action, all claims of misjoinder are properly addressed under Rule 8(b), including claims of misjoinder of offenses. *See Corbin, supra* at 649 n. 1. Whether separate offenses are part of a "series of acts or transactions" under Rule 8(b) depends on the relatedness of the facts underlying each offense. When facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper. *Corbin, supra* at 649. When there is no substantial identity of facts or participants between the two offenses, there is no "series" of acts under Rule 8(b). *Id.*

1. Defendant Flanigan

■ Joinder under Rule 8(b) is proper where an indictment charges multiple defendants with participation in a single conspiracy. *See United States v. Zielie,* 734 F.2d 1447, 1463 (11th Cir.1984); *Hewes, supra* at 1318. Joinder is not improper under Rule 8, even though the defendants are alleged to have committed different predicate crimes, where the defendants are alleged to have furthered the same racketeering enterprise. *See United States v. Bright,* 630 F.2d 804, 812–13 (5th Cir.1980). The joinder questions in *Zielie, Hewes* and

acies are alleged as the predicate acts for Counts 1 and 2, the RICO/conspiracy to commit RICO counts.

*Bright* were in relation to allegations of RICO violations and conspiracy to commit RICO violations. In *Zielie, supra* at 1463, the predicate and overt acts were all related to the common purpose of profiting from a coordinated and connected series of marijuana transactions. In *Hewes, supra* at 1311–12, the predicate and overt acts were related to the purpose of maintaining a network of interdependent fraud schemes. In *Bright, supra* at 808, the predicate and overt acts were related to the purpose of extorting payoffs and accepting bribes in exchange for the county sheriff's not performing some of his law enforcement duties.

■ In the present case, the Defendants have allegedly committed a variety of predicate and overt acts which the indictment connects under the umbrella of RICO. However, there is no apparent common purpose or scheme connecting the alleged acts of Flanigan and Caldwell, regarding mail fraud and destruction of a vessel, to the alleged acts of Caldwell and the other Defendants regarding bribes and extortion. The apparent purpose of the alleged mail fraud and destruction of vessel, as set forth in the indictment, was to defraud insurance companies so that Flanigan and Caldwell would benefit financially. The apparent purpose of the allegedly unlawful conduct of Caldwell and the other Defendants, in the form of bribery and extortion, was to misuse their public office for personal financial gain and/or career advancement and also to obtain funds for the benefit of Caldwell's political career. While the court cannot exclude the possibility that the government's evidence at trial would show a real factual link between these offenses and a common enterprise, it is unwilling to allow this determination to await the end of a six-to-eight week trial. Because the RICO indictment does not clearly show the basis for such linkage, the court finds that the charges against Flanigan and Caldwell of mail fraud and destruction of vessel (Counts 5 through 12) have been

misjoined under Rule 8(b) and will be severed.

**2. Defendants Buffington and Suggs**

■ The joinder of these defendants in Counts 1 through 3 (RICO violation, conspiracy to commit RICO violation, and conspiracy to commit extortion) is proper under Rule 8(b) because the predicate and overt acts alleged to have been committed by these defendants are part of an alleged single conspiracy with a common purpose. *See Zielie, supra; Hewes, supra;* and *Bright, supra.*

**3. Defendants Brown and Coarsey**

The court now turns to motions for severance filed by Brown and Coarsey. These motions relate to perjury charges against these Defendants (Counts 13 and 14 allege perjury by Defendant Brown; Counts 15 through 19 charge perjury by Defendant Coarsey)[7] with regard to the joinder issue under Rule 8(b). In *Corbin, supra,* the court found proper joinder under Rule 8(b) of charges of substantive drug offenses and perjury. The court stated, at 650:

Proof of perjury required proof of knowledge of the substantive drug offenses, because the allegedly perjured testimony was uttered in response to questions concerning the drug offenses. There was thus the substantial identity of facts and participants necessary for proper joinder.

In *Corbin,* each of the six defendants charged with perjury had also been charged with the substantive drug offenses. In fact, it was the two defendants who were not charged with perjury, but only drug offenses, who raised the issue of misjoinder under Rule 8(b). In *United States v. Clemente,* 494 F.Supp. 1310 (S.D. N.Y.1980), several of the defendants were charged with violating the Hobbs Act, 18 U.S.C. § 1951 (extortion), and one of those defendants was also charged with perjury regarding testimony before a grand jury investigating extortion and racketeering.

---

**7.** In an order entered September 19, 1984, the court granted Defendant Coarsey's motion to sever, but reserved discussion of its reasons for this order.

The court, *supra* at 1324, found that the perjury charges were properly joined to the substantive offenses because the substantive counts were the subject of the questions involved in the perjury charges.

■ Joinder of the perjury charges against Brown is proper under Rule 8(b). The allegations underlying those charges are that Brown falsely denied soliciting political contributions from any Department of Labor employees, including Gail Summers, and that she falsely denied attempting to sell tickets for Caldwell's appreciation reception to Department of Labor employees. The conduct which Brown has denied is the same conduct alleged to constitute some of the predicate and overt acts of the RICO violation and RICO conspiracy offenses for which she is also charged. Evidence that such conduct did occur will necessarily be used in proving the perjury charges as well as the RICO charges. As stated in *Corbin, supra* at 649, joinder is proper "when the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense."

■ Such commonality of proof does not exist with regard to the perjury charges against Coarsey. The first perjury charge (Count 15) alleges that Coarsey falsely denied knowing about a payment of $1,000 from Tommy Marchant to Caldwell, for a job with the Department of Labor, or telling Marchant that he, Marchant, could get such a job by contributing $1,000 to Caldwell. The alleged act of bribery by Caldwell in taking $1,000 from Marchant to give Marchant a job is one of the predicate and overt acts identified in the RICO violation and RICO conspiracy counts. However, proof of Coarsey's knowledge of such payment or his alleged statement to Marchant is not necessary to establish the alleged act of bribery. There is no allegation that Coarsey was a party to the bribery. The facts underlying the allegation of bribery are not relevant to the proof required for this perjury charge.

The second perjury charge (Count 16) alleges that Coarsey falsely denied knowing whether Bill Durham paid Caldwell, or anyone else, in order to obtain a certain job with the Department of Labor. One of the predicate and overt acts identified in the RICO counts is Caldwell's alleged receipt of $500 from Durham for appointing Durham to a public office. There is no allegation that Coarsey played any role in that alleged transaction. Proof of Coarsey's knowledge of that transaction is necessary for the perjury charge but not relevant to the proof of the transaction. The facts establishing the existence of that transaction are not relevant to the charge of perjury.

The third perjury charge (Count 17) alleges that Coarsey falsely denied seeing certain money counted while at Jeanette Dickens' house on a certain Saturday afternoon. This alleged counting of money is not mentioned in any of the allegations of the indictment other than this perjury charge. The government contends that the evidence to prove this perjury charge will be part of its evidence to establish a predicate act of extortion under Count 1 and the extortion conspiracy charge in Count 3. However, there is no allegation that Coarsey was involved in such extortion or conspiracy. Proof that Coarsey merely saw money counted at a particular place and at a particular time is not necessary to prove extortion or conspiracy and has little, if any, relevance to the proof of such charges.

The fourth perjury charge (Count 18) alleges that Coarsey falsely denied knowledge beforehand of Ms. Davison's decision to transfer a Labor employee, Lynn Whittle, because that employee refused to make a political contribution. This alleged punitive transfer is not mentioned in any of the other counts of the indictment. The government contends that the evidence to prove this perjury charge will be part of the evidence of a predicate act of extortion and the extortion conspiracy. As noted above, there are no allegations that Coarsey was involved in extortion or conspiracy. Proof that Coarsey may have known of someone else's plan to punitively transfer a

Labor employee is not necessary to prove extortion or conspiracy and has little, if any, relevance to the proof of such charges.

The final perjury charge (Count 19) alleges that Coarsey falsely denied ordering anyone to work on Caldwell's boat, other than people that worked for Coarsey's son. This work on Caldwell's boat is not mentioned in any of the other counts of the indictment. The government contends that the evidence to prove this perjury charge, which involves refurbishment of a vessel known as "Our Way," will also be used to prove a predicate act of extortion, an overt act (extortion) under the RICO conspiracy, and the extortion charge in Count 4. As stated earlier, Coarsey is not alleged to have participated in any extortion or conspiracy. The extortion the government refers to as being related to this perjury charge is the alleged coercion by Caldwell of some Labor employees to contribute money to be used for refurbishing "Our Way." Proof that Coarsey ordered anyone to work on Caldwell's boat, "Our Way," is not necessary to prove the acts of extortion alleged by the government and has little, if any, relevance to proving such charges.

As stated in *Corbin, supra* at 649, there is no "series" of acts required under Rule 8(b) when there is no "substantial identity" of facts or participants between the two offenses. An individual analysis of each of the perjury charges against Coarsey has shown that there is no identity of facts between the perjury offenses and the various alleged acts of extortion and conspiracy. The proof required to establish the perjury charges is distinct from that required to show the predicate and overt acts of extortion. Furthermore, since Coarsey is charged only with perjury, unlike Brown, there is no identity of participants between the perjury charges and any of the other offenses. For these reasons, the court finds that Coarsey has been misjoined under Rule 8(b). Accordingly, his motion for severance has been granted.

## C. *Conclusion*

Based on the discussion and analysis above, the motions for severance of Suggs, Buffington and Brown are hereby DENIED. Flanigan's motion for severance is hereby GRANTED under both Rules 8 and 14, F.R.Crim.P. On Flanigan's motion and the court's own motion, the indictment will be divided for trial as follows: Counts 3, 4, 13 and 14 will be tried first; immediately thereafter Counts 5 through 12 will be tried; Counts 1 and 2 will be tried next. Counts 15 through 19 which have no relationship to any other counts, will be tried at a time mutually convenient to the parties.