878 F.2d 1431
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl William CLEVELAND, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfred RODRIGUEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose E. ESMENDE, Defendant-Appellant.
 No. 88-5581.
 United States Court of Appeals, Fourth Circuit.
 Argued March 10, 1989.
Decided July 3, 1989.
 
 Andrew Burns, Thomas P. Bernier (Fowley, Beckley, Stevens & Cole on brief), Joseph C. LaVerghetta (Klemkowski & Laverghetta, P.A. on brief) for appellants.
 Martin Stanley Himeles, Jr., Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney on brief) for appellee.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and STAKER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Carl William Cleveland, Alfred Rodriguez, and Jose E. Esmende were charged with conspiracy to import cocaine, 21 U.S.C. Sec. 963; conspiracy to possess cocaine with intent to distribute, 21 U.S.C. Sec. 846; unlawful importation of cocaine, 21 U.S.C. Sec. 952, and aiding and abetting the same, 18 U.S.C. Sec. 2; and possession of cocaine with intent to distribute, 21 U.S.C. Sec. 841(a)(1), and aiding and abetting the same, 18 U.S.C. Sec. 2.* In addition, Esmende was charged with distribution of more than 500 grams of a substance containing cocaine, 21 U.S.C. Sec. 841(a)(1), and aiding and abetting the same, 18 U.S.C. Sec. 2. Following a jury verdict finding them guilty on all counts, the district court imposed concurrent sentences of twelve-year terms for each offense, together with three-year special parole terms on the substantive offenses and fifty dollar special assessments on each offense. Cleveland, Rodriguez, and Esmende appeal, contending that the sentencing provisions of Sec. 841 violate the Fifth and Eighth Amendments to the United States Constitution, that the district court erred in not granting Cleveland's and Rodriguez' motions to sever their trial from that of Esmende, and that the district court erroneously instructed the jury on the definition of "importation" under Sec. 952. Finding no merit to these contentions, we affirm.
 
 
 2
 Esmende was a sailor on the merchant vessel Golden Eagle. While the Golden Eagle was anchored in Buenaventure, Colombia, Esmende and two other crewmen, Marcos Huapaya and Carlos Hernandez, separately agreed with parties known only as "Don Pala," "Don Julio," and "Mango Face" to deliver cocaine to other parties known only as "Piempo" and "Gerardo" in Houston, Texas--the Golden Eagle's first port of call in the United States. The three crewmen assisted each other in hiding the cocaine on the Golden Eagle, and, later, when they found that the Golden Eagle was to dock in Baltimore, Maryland, rather than Houston, agreed to help each other deliver the cocaine and to split the profits.
 
 
 3
 Once in Baltimore, Esmende and Huapaya succeeded in contacting Piempo and Gerardo, and, on October 16, 1987, met with Piempo's agent, Charles Moore, at the Beltway Motel. The next day they delivered four kilos of cocaine to Moore and agreed to deliver an additional four kilos when he had returned from Houston with their courier fee.
 
 
 4
 On October 18, Huapaya was instructed to contact Gerardo's agent and, together with a fourth seaman, Lopez, took a taxi to the Hallmark Hotel in Baltimore where he met with Cleveland and Rodriguez. Cleveland, however, spotted government agents observing the meeting, and the group split up before any cocaine had exchanged hands. Huapaya and Lopez were soon arrested, and four kilos of cocaine, together with a slip of paper with the phone number of the Hallmark Hotel and a room number were seized. Upon investigation, the government determined that the room was registered to Cleveland and Rodriguez. Cleveland and Rodriguez were then arrested as they left their room with their luggage. After obtaining a search warrant, the government seized $44,786 in cash from Cleveland's garment bag and an additional $800 from Rodriguez' suitcase.
 
 
 5
 Following these events, the government, with Huapaya's cooperation, arranged a second meeting with Charles Moore, and Moore was arrested after meeting with government agents. In addition, acting on information from Huapaya, the government searched the Golden Eagle and discovered four kilos of cocaine in Esmende's room and six kilos in Huapaya's. Esmende was then arrested.
 
 
 6
 All three appellants contend that the mandatory minimum sentences required by the Narcotic Penalties and Enforcement Act of 1986, 21 U.S.C.A. Sec. 841(b) (West Supp.1989), for a violation of Sec. 841(a) violate the Eighth Amendment's prohibition of cruel and unusual punishment and the due process and equal protection provisions of the Fifth Amendment. This court, however, rejected these contentions in United States v. Whitehead, 849 F.2d 849 (4th Cir.), cert. denied, --- U.S. ----, 102 L.Ed.2d 566 (1988).
 
 
 7
 Cleveland and Rodriguez next contend that the district court erred by not granting their motion to sever their trial from that of Esmende. The basis of their argument is that the government's evidence against Esmende was much stronger by virtue of the evidence concerning the sale of cocaine to Moore and that evidence concerning this transaction lent credence to the government's claim that a similar transaction was to take place between them and Huapaya. Implicit in this argument is a contention that Moore was part of a separate conspiracy not involving them and that the evidence of the sale to Moore related solely to that conspiracy.
 
 
 8
 Cleveland and Rodriguez moved for severance under rule 14 of the Federal Rules of Criminal Procedure on the grounds that they were prejudiced by being tried together with Esmende. Our review of the district court's denial of their motion under these circumstances is limited to determining whether the district court abused its discretion. United States v. Brugman, 655 F.2d 540, 543 (4th Cir.1981). We conclude that it did not. In the first place, the indictment charged only one conspiracy, and the jury was properly instructed that it must acquit the defendants if it found several conspiracies but not the single one charged in the indictment. Further, although the government's case was undoubtedly strengthened by the evidence of the sale by Esmende to Moore, the government also introduced direct evidence concerning Cleveland and Rodriguez--notably Huapaya's direct identification of them as his contacts and his possession of a piece of paper with their hotel room and phone number written on it--which alone was sufficient to convict them.
 
 
 9
 Cleveland and Rodriguez next contend that the district court erred in instructing the jury that "importation," as used in 21 U.S.C. Sec. 952, "continues until the [imported] article reaches its final destination." Cleveland and Rodriguez' proposed instruction would have further defined "reaching its final destination" as being "accomplished when [a controlled substance] is off-loaded from the vessel in the United States." We conclude that the district court's instruction was in accord with settled law, United States v. Leal, 831 F.2d 7, 9 (1st Cir.1987); United States v. Mitchell, 777 F.2d 248, 261-62 (5th Cir.1985), cert. denied, 476 U.S. 1184 (1986); United States v. Martinez, 763 F.2d 1297, 1304 (11th Cir.1985); United States v. Corbin, 734 F.2d 643, 652 (11th Cir.1984), and was justified by the evidence which demonstrated that the cocaine's final destination was Houston, Texas. Huapaya and Esmende agreed with Colombia suppliers to transport the cocaine to Houston. When the Golden Eagle was diverted to Baltimore, Cleveland and Rodriguez traveled from Houston to Baltimore on behalf of their employer to pick up the cocaine and take it back to Houston. Further, the cocaine was not off-loaded from the Golden Eagle until Huapaya had contacted them and arranged a meeting.
 
 
 10
 In view of the above, the district court's judgments of convictions of Esmende, Cleveland, and Rodriguez are affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The initial indictment charged Cleveland, Rodriguez, Carlos Asner Arango Hernandez, Tomas Alfonso Velarde Lopez, and Charles Moore. A superseding information charging Huapaya only with importation and aiding and abetting was later filed pursuant to a plea agreement. A superseding indictment then added Esmende as a defendant. Superseding informations were subsequently filed against Moore, Lopez and Hernandez