**UNITED STATES of America**

**v.**

**ROCKWELL, Ernest G., Appellant.**

**No. 85–3020.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 9, 1985.

Decided Jan. 16, 1986.

As Amended Feb. 6, 1986.

Paul D. Boas, (Argued), Berlin, Boas & Isaacson, Pittsburgh, Pa., for appellant.

Constance M. Bowden, (Argued), Paul J. Brysh, U.S. Atty's. Office, Pittsburgh, Pa., for appellee.

Before HUNTER, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, JR., Circuit Judge.

Defendant Ernest Rockwell appeals from his conviction and sentence under 18 U.S.C. App. § 1202(a)[1] which prohibits the possession of firearms by a convicted felon. For the reasons set forth below, we will reverse.

### I.

Viewed in the light most favorable to the government, the facts shown at trial were as follows: On September 5, 1982 at approximately 1:30 a.m., two Braddock Hills, Pennsylvania police officers observed an automobile operated by appellant Ernest Rockwell being driven erratically. The two officers, Randy Weber and Eugene Colletto, stopped the vehicle. Officer Weber approached the vehicle and asked Rockwell to produce his driver's license and car registration. After noticing signs of intoxication, Officer Weber asked Rockwell to exit the vehicle and began to perform cer-

---

1. Section 1202(a) provides in pertinent part:
   Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, ... and who

receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

tain field sobriety tests. In administering the finger-to-nose-test, Officer Weber observed a bulge in Rockwell's right front pocket. According to Officer Weber, he then reached into Rockwell's pocket and pulled out a .22 caliber derringer handgun.

Rockwell was arrested and charged with three state offenses—driving under the influence, carrying a firearm without a permit, and possession of a firearm by a "former convict."[2] App. at 109a. At the state court preliminary hearing on the charges held several weeks later, both police officers asked the Magistrate to withdraw the two firearms charges and proceeded only on the drunk driving charge. App. at 110a, 151a. Sometime thereafter, Agent Roger

Greenbank of the Federal Bureau of Investigation, upon reviewing Rockwell's offense record, noticed that there was no disposition listed with respect to the state firearms violations. He then contacted Officer Weber for an explanation and also requested that the gun be turned over to federal custody. Subsequently, on August 30, 1984, a little over a year after the state charges were dropped, Rockwell was arrested and charged with violating 18 U.S.C. App. § 1202(a). Trial commenced in federal court on November 26, 1984 and the jury returned a verdict of guilty on November 27, 1984.

Rockwell's principal contention on appeal[3] alleges error in the trial court's in-

---

**2.** The Pennsylvania statute provides: "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control." 18 Pa.Cons.Stat.Ann. § 6105 (Purdon 1983).

The state law charge was based on a 1962 robbery conviction which also constitutes the "prior felony" in the instant indictment.

**3.** Rockwell also contends that the trial court (1) committed reversible error in failing to grant a mistrial when a suppressed statement was inadvertently admitted into evidence on direct examination of a government witness, and (2) abused its discretion in denying Rockwell's request that he be permitted to change into a pair of jeans to demonstrate to the jury that the derringer would not have created a noticeable bulge had he possessed it.

As to issue I, Rockwell analogizes the circumstances of this case—the inadvertent admission of a suppressed statement—to those wherein a statement is erroneously ruled admissible by the trial court. Upon review, Rockwell urges, the proper remedy in both situations is a reversal and remand for a new trial. The government does not dispute Rockwell's contention that the admission of testimony regarding a statement allegedly made by Rockwell prior to the issuance of *Miranda* warnings was error. Rather, the government argues that the error was harmless.

Although it is a close question whether the trial judge should have granted a mistrial, *cf. Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (where the alleged error is of constitutional dimensions, the prosecutor is required to prove beyond a reasonable doubt that it did not contribute to the jury verdict); *United States v. Scarfo,* 685 F.2d 842, 845–46 (3d Cir.1982) (same), *cert. denied,*

459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983), in light of our reversal on nonconstitutional grounds we need not decide here whether it was harmless error. However, we assume that if the case is tried again, the prosecutor will make it explicitly clear to the witnesses that testimony about suppressed evidence must not be volunteered.

As to Rockwell's second contention, we note that this court has long recognized the broad latitude of the trial judge in ruling on questions of admissibility, *United States v. Long,* 574 F.2d 761, 767 (3d Cir.1978); Fed.R.Evid. 403. When one seeks admission of "demonstrative evidence," the trial judge has at least as much latitude as exists when ruling on other questions of admissibility. Arguably a trial judge may have even greater latitude when dealing with demonstrative evidence *per se.* The Fifth Circuit has framed the standard as follows:

> " '[t]he admissibility of demonstrative evidence is largely within the discretion of the trial judge,' and his exercise of that discretion will not be upset 'unless there is no competent evidence in the record to support it.' " *Wright v. Redman Mobile Homes, Inc.,* 41 F.2d 1096, 1097–98 (5th Cir.1976) (*quoting Meadows & Walker Drilling Co. v. Phillips Petroleum Co.,* 417 F.2d 378, 382 (5th Cir.1969)).

Defense counsel's request for leave of court to permit Rockwell to change into a pair of jeans was denied after the government objected on the grounds that the jeans were not those worn by Rockwell on the night of the alleged seizure, and that the physical conditions in the courtroom were markedly different from those at the scene of the arrest. In addition, the district judge noted his concern for Rockwell's potential exposure to cross examination. App. at 148a. We find that under these circumstances the district court's exclusion of demonstrative evidence did not constitute an abuse of discretion.

structions to the jury. In particular, Rockwell argues that the instruction to the jury that it need not resolve the conflict between the contradictory testimony from Officer Weber and the Mayor of Braddock Hills, Richard Foster, as to the reasons the state firearm charges were dropped, invaded the province and function of the jury to determine the credibility of Officer Weber's testimony, and was therefore reversible error. We agree.

## II.

Throughout the trial in this matter, appellant Rockwell asserted as his only defense that he never at any time possessed the firearm in question. Rockwell maintains that the derringer was a "throw down"[4] weapon and thus he was the victim of a false charge concocted by Officer Weber. *See* App. at 154a–163a. To support this contention, Rockwell sought to cause the jury to have a reasonable doubt as to the credibility of Officer Weber, the government's chief witness. Rockwell relied on a variety of facts established by the evidence to create an inference that he did not in fact possess the weapon. First, although Officer Colletto was present and stood approximately one and one half feet from Rockwell during the search and arrest, he testified that he did not actually see Weber remove the gun from Rockwell's pocket. App. at 112a–13a. Colletto saw the gun for the first time at the police station hours after the arrest. App. at 106a. Moreover, on the evening of the arrest, Colletto urged that Rockwell not be charged with the firearm offenses.

Second, although the police report indicated that appellant "had upon his person a four shot .22 Four Aces" derringer, App. at 183a, no mention was made of Officer Weber having *seized* the weapon at the time of the arrest. In addition, no fingerprints were found on the gun.

Finally, the state firearm charges were mysteriously dropped at the request of Officers Weber and Colletto. Several months after the dismissal of the charges, Officer Weber took possession of the gun from the Allegheny County Crime Lab where it had been sent for testing. When a federal investigation was initiated Officer Weber was originally unable to produce the weapon. He subsequently located the derringer at his home in a box of Christmas decorations.

During the prosecution's case in chief, Officer Weber testified that he had pulled the gun from Rockwell's pocket after noticing a bulge. On cross examination, Weber testified that he had been approached by the Mayor of Braddock Hills, Richard Foster, who requested that the charges be dropped.[5] At the close of the prosecution's case, the defense called Mayor Foster as its first witness. Mayor Foster testified that he did not know Rockwell, had no interest

---

**4.** The term "throw down" is jargon customarily employed by persons in criminal law enforcement. In substance the term refers to the planting of a weapon or contraband on a defendant by a police officer to justify actions taken by the officer during an attempted arrest or to provide the basis for a criminal prosecution against the defendant. In a dissenting opinion in *Webster v. City of Houston*, 735 F.2d 838, 843 n. 1 (5th Cir.1984), Judge Williams succinctly explained the usage of "throw down" weapons by the police:

> Wounding or killing an unarmed suspect or arrestee would normally be an unwarranted use of deadly force. To make an unjustified shooting appear justified, a police officer can lay or "throw down" a gun or knife, which is usually not traceable to the officer, next to the victim. In a similar manner, drugs or other controlled substances may be "thrown down"

or planted on a victim of an unfounded arrest.

*Id.* *Webster* involved litigation challenging the practice of the Houston police force of using "throw down" weapons to justify excessive force exercised in making arrests. For further discussion of the practice, see *Webster v. City of Houston*, 689 F.2d 1220, 1221–23 (5th Cir.1982).

**5.** In addition to Weber's assertion that Mayor Richard Foster asked that the firearm charges against Rockwell be dropped, both Colletto and Weber maintained at trial that Officer Joe Terry from a neighboring borough had offered them one hundred dollars to drop the charges. App. at 121a–23a, 171a. Rather than reporting the attempted bribe, Colletto and Weber testified that they dropped the charges "as a favor" to Officer Terry, but did not accept the money. App. at 114a, 174a.

in the case, and had never asked Weber or anyone else to withdraw the state firearm charges filed against Rockwell. Foster's testimony, described by the court at sidebar as the "guts" and "power" of appellant's case, put Weber's general credibility in question. Appellant argued that if Weber lied about his reasons for withdrawing charges as serious as those filed against Rockwell, the most likely explanation was that there never was a gun in Rockwell's possession. Thus, if the jury found Weber's testimony regarding the reasons for dropping the charges incredible, they could conclude that his testimony regarding seizure of the gun was likewise incredible.

### III.

In its charge to the jury, the district court stated the following:

It's further your jurisdiction to decide the credibility of the witnesses. That is, their truthfullness or the lack of it. In deciding the credibility of witnesses, you may take into consideration their demeanor and their appearance on the stand, whether they appeared to recollect the facts clearly, whether they appeared to have been shaken on cross examination, whether they have any interest in the outcome of the case, whether they appeared to be prejudiced in any way, and anything else which to you indicates the presence or the absence of credibility. Credibility is entirely within your hands.

If you find that any witness testified falsely about any *material* fact, you may disregard all of his testimony, or you may accept such parts of it as you wish to accept and exclude such parts of it as you wish to exclude.

App. at 289a (emphasis added).

Thus the district court by the above quoted charge granted to the jury the option to implement the concept that traditionally has been categorized as *falsus in uno, falsus in omnibus*. *See* 1 E. Devitt & C. Blackmar, *Federal Jury Practice And Instructions* § 17.08 (3d ed.1977). Yet in the very next sentence the district court, in effect, abrogated its prior directive which

had devolved to the jury the task of determining all issues of credibility by precluding the jury from considering a credibility conflict between two significant witnesses. The district court instructed the jury that "[i]t is not necessary in deciding this case to decide the issue of credibility between Mr. Foster and Mr. Weber. That issue is collateral to the main issue here. That main issue is simply whether the defendant possessed the derringer on the night that you have heard described." App. at 289a–90a. Defense counsel promptly objected. It is this latter instruction that constitutes the primary basis of this appeal.

Reference to Mayor Foster was first made during cross examination of Officer Weber where defense counsel sought to ascertain from Weber the reasons that had prompted him to drop the state firearm charges. Concededly, the only element of the § 1202 offense in dispute was possession of the derringer. Thus, the question why comparable state charges had been dropped is technically collateral to the issue tried, whether Rockwell possessed the derringer on the night in question. Absent objections, however, the trial judge permitted the inquiry. Thereafter, defense counsel elicited testimony from Officer Weber that implicated Mayor Foster in the decision not to pursue the state firearm charges filed against Rockwell.

It is well established that the scope and extent of cross examination is within the sound discretion of the trial judge, *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *United States v. Adams*, 759 F.2d 1099, 1110 (3d Cir.1985); *Government of Virgin Islands v. Blyden*, 626 F.2d 310, 313 (3d Cir.1980) and that wide latitude should be afforded where a genuine issue of credibility exists. *Harris v. United States*, 371 F.2d 365, 367 (9th Cir.1967). The trial judge must determine the extent to which cross examination may be allowed on collateral matters. *United States v. Stoehr*, 100 F.Supp. 143, 155 (M.D.Pa.1951), *aff'd*, 196 F.2d 276 (3d Cir.1952). Thus it was well within the trial court's discretion to allow the defense to

question Weber about the withdrawal of the charges. Once Weber responded, however, the defense could have been precluded from offering Mayor Foster's testimony or other extrinsic evidence in rebuttal.

Generally, "[i]n federal courts ... extrinsic evidence is not admissible to rebut cross examination testimony relating to a collateral matter." 2 *Wharton Criminal Evidence* § 467 (Supp.1985). *See also Tinker v. United States*, 417 F.2d 542 (D.C.Cir.), *cert. denied*, 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969); *United States v. Corbin*, 734 F.2d 643, 655 (11th Cir.1984). Rather, a party's right to impeach the credibility of the opposing party's witness is limited to the questioning of *that* witness on cross examination. *Corbin*, 734 F.2d at 655. Mayor Foster's testimony was presented solely for the purpose of contradiction. Absent Officer Weber's statement implicating Mayor Foster, there was no independent reason for Mayor Foster to testify. Indeed, by his own words, the mayor had no interest in or knowledge of the charges against Ernest Rockwell prior to the indictment. As such, Mayor Foster's testimony related to a matter technically collateral to the substantive issues of the case, *see United States v. Jarrett*, 705 F.2d 198, 207 (7th Cir.1983), *cert. denied*, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984), and perhaps could properly have

been excluded, *see United States v. Agnes*, 581 F.Supp. 462, 475–76 (E.D.Pa.1984). We hasten to add, however, that although trial judges have great latitude in excluding evidence that is clearly collateral, in a criminal prosecution where, as here, the credibility of the witnesses is itself a crucial factor, the trial judge must take care not to impede the truth seeking function of the trial process by prematurely excluding relevant evidence.

## IV.

At trial, the government did not object to the scope of defense counsel's cross examination of Weber. Nor did they challenge the admissibility of Mayor Foster's testimony as inadmissible extrinsic evidence introduced to contradict a collateral issue. Thus, those issues are not before us now.[6] We must decide whether, once admitted, Mayor Foster's testimony and the conflict created thereby presented a credibility issue peculiarly within the province of the jury that was usurped by the trial court's instructions to the jury.

The government contends that the dispute over whether Mayor Foster requested Weber to drop the charges is collateral to the only fact at issue in this case—whether Rockwell was in possession of the derringer. As such, the government submits that

---

**6.** We make no determination here whether the inclusion of Mayor Foster's testimony would have constituted an abuse of discretion had the government registered a timely objection. We simply note that extrinsic evidence offered for the purpose of contradiction on a collateral issue is generally *excludable* in the discretion of the trial court. *United States v. Abascal*, 564 F.2d 821, 831 (9th Cir.1977), *cert. denied*, 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978); Fed.R.Evid. 403.

Judge Garth's thoughtful concurrence criticizes our analysis of the testimony concerning the dropping of the state weapons charges as authorizing the trial judge to exclude such evidence at Rockwell's new trial. *See* Dissent at 4. Our decision today, however, in no way *directs* the trial judge to exclude Mayor Foster's testimony, or generally to exclude summarily evidence that is technically collateral to the substantive issues at trial. To the contrary, we caution the district court that the exclusion of *technically* collateral evidence may under cer-

tain circumstances constitute an abuse of discretion. The admissibility of such evidence, however, does not alter its character. We refuse to depart from the traditional understanding of collateral evidence which we believe is characterized in accordance with its relation to the substantive issues at trial. We also refuse, as we must, to predict what evidence may be presented if Rockwell is retried and what rulings the trial judge should make regarding such evidence. Rather, we commit to the trial court that which has always been within its discretion—the determination of the admissibility of evidence. The trial judge remains at liberty to make alternative holdings when ruling on admissibility, and what is inadmissible under one rule or precept of evidence may be properly admitted, even compelled, under another. That decision, however, is in the first instance with the trial court. The totality of the circumstances at trial should guide its discretion and, upon review, inform our determination of whether an abuse has occurred.

the dispute was immaterial and its resolution inconsequential in that it could not lead a jury to reasonably infer that the real reason the charges were dropped was that Rockwell never possessed the weapon. Thus, any error that may have resulted from the trial court's instructions to the jury was harmless.

Rockwell, on the other hand, argues that based on his defense that the derringer was a "throw down" weapon, the dispute between Weber and Mayor Foster became a "crucial and material factual issue." Proceeding from that premise, Rockwell contends that the trial judge's instructions to the jury deprived him of the benefit of the *falsus in uno, falsus in omnibus* charge and thus invaded the province of the jury as the arbiter of issues of credibility.

We think that the parties' preoccupation with the collateral/material issue distinction is misplaced. The crucial factor in this case is that Officer Weber was the government's only *material* witness; without Weber's testimony, on the record before us, the government's case is severely weakened. "The Supreme Court has recognized that where the government's case in a criminal prosecution may stand or fall on the jury's belief or disbelief of one witness, that witness's credibility is subject to close scrutiny." *United States v. Partin,* 493 F.2d 750, 760 (5th Cir.1974) (*citing Gordon v. United States,* 344 U.S. 414, 417, 73 S.Ct. 369, 372, 97 L.Ed. 447 (1953)). Once the conflicting testimony of Officer Weber and Mayor Foster was accepted into evidence without objection, a question of fact was presented for the jury that was interrelated to Weber's general credibility. It is well settled that where there is a conflict or contradiction of evidence, the question should be submitted to the jury under proper instructions from the court.

"It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts." *Tennant v. Peoria & P.U. Ry. Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); *see also United States v. Hill,* 449 F.2d 743, 743 n. 3 (3d Cir.1971). The law will not countenance a usurpation by the court of the function of the jury to decide the facts and to assess the credibility of the witnesses.

■ In the instant appeal, the determination of whether the district court's instructions taken on the whole invaded the province of the jury does not hinge upon the characterization of the dispute between Weber and Mayor Foster. Put otherwise, the fact that the conflict is collateral, as we have found, is not dispositive of this case. Instead, due regard must be accorded to the centrality of Weber's credibility to the judicious resolution of this case. *Cf. McConnell v. United States,* 393 F.2d 404, 406 (5th Cir.1968); *United States v. Persico,* 349 F.2d 6, 8–11 (2d Cir.1965). Thus, the question here is not whether it was *necessary* for the jury to resolve a conflict on a collateral issue,[7] but rather, whether the jury should be *permitted* to consider the conflict in assessing the overall credibility of witnesses. Indeed, a jury might reasonably find that Weber, even if deliberately lying about why he dropped the charges, was nonetheless telling the truth about Rockwell's possession of the gun. *See United States v. Spain,* 536 F.2d 170, 173 (7th Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976); *United States v. Tropiano,* 418 F.2d 1069, 1074 (2d Cir.1969). Thus, an instruction to the jury to the effect that a deliberate falsehood as to a collateral matter need not impugn oth-

---

7. The government argues, in effect, that because the conflict concerned a collateral issue, it is wholly irrelevant to the jury's determination of the overall credibility of the witnesses. The government may not, however, achieve on appeal that which it failed to urge at trial, i.e., the exclusion of all testimony relating to the dismissal of the state firearm charges. To allow such a result on appeal would rob Rockwell of the primary evidence presented to support his theory at trial and deprive him of notice and the opportunity to come forward with additional evidence. Had the evidence been objected to and excluded at trial, Rockwell would have there been afforded with the opportunity to attempt alternative means of impeachment.

er aspects of a witness' testimony, in itself, would not be erroneous. Here, however, the instructions by the trial judge, taken as a whole, *see United States v. Palmeri*, 630 F.2d 192, 201 (3d Cir.1980); *Ayoub v. Spencer*, 550 F.2d 164, 167 (3d Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977), removed all consideration of the conflict as it relates to Weber's credibility from the rightful province of the jury. While first indicating that the jury was to decide the issue of credibility, the district court's charge encouraged the jurors to do so without reference to the conflict that had key credibility implications with regards to Officer Weber and Mayor Foster. In fact, the court's instructions are easily construed as authorizing the jury to reject or accept in whole or in part the testimony of a witness *only* if the witness had lied on a material issue. If a witness had not testified falsely about a material issue, the jury may have inferred that it was bound to accept the whole of the witness' testimony. The charge thus encroached upon the prerogative of the jury to independently assess the credibility of the witnesses.[8]

Mayor Foster's testimony was the only evidence offered in direct contradiction of Weber's testimony. The jury had the right, if not the obligation, to consider the Mayor's testimony in determining whether it believed beyond a reasonable doubt that Officer Weber was telling the truth about Rockwell's possession of the derringer. Moreover, Rockwell was entitled to have the jury consider all of the evidence before it in arriving at a verdict. Because the jury could have reasonably construed the instruction to mean that it need not credit Mayor Foster's testimony at all or that it need not consider the conflict in evaluating Officer Weber's testimony, the instruction improperly invaded the province of the jury to determine the facts and to assess the credibility of the witnesses. We have recently held that "[t]he trial court should be reversed only if the instruction was capable of confusing and thereby misleading the jury." *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984). We think that the instruction here was sufficiently misleading to deprive Rockwell of a fair trial.

In reversing, we are not unmindful of the conscientious manner in which the trial judge presided. We are also aware that on appeal counsel may magnify issues that at trial seemed to be of marginal or no importance. However, here we cannot conclude that Officer Weber's testimony was of marginal importance, or that defense counsel's efforts to obtain an explanation for the withdrawn state charges was an excursion into trivia. Weber's testimony was the *sine qua non* of the government's case. His conduct—retrieving evidence, taking it to his home and losing it among Christmas decorations, allegedly entertaining a bribe from a fellow police officer and a request from a Mayor to drop serious firearm charges—was far from exemplary and was at best unorthodox. Certainly, where such a critical witness' credibility has been challenged it is inappropriate to limit the jury as fact finder in its consideration of all evidence that aids in the enlightened determination of credibility.

## CONCLUSION

Accordingly, the judgment of conviction will be vacated and the case remanded for proceedings consistent with this opinion.

---

8. The government contends that the trial court's instructions on the collateral conflict between Weber and Foster could not have circumvented the *falsus in uno* charge because that charge is applicable only with respect to material issues. In *United States v. Rutkin*, 189 F.2d 431 (3d Cir.1951), *aff'd*, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952), this court, however, noted with approval the words of Professor Wigmore:

'In the nature of character, a person who would lie upon a collateral point is perhaps likely to be a more determined liar than one who dares it only upon a material point; at any rate, there is no less a call to distrust the former than the latter.' 189 F.2d at 439, (*quoting* 3A Wigmore, Evidence § 1014, at 991 (Chadbourn rev. 1970)).

While we might not go so far as to require an instruction suggesting, as does Wigmore, that lying on a collateral point is even more indicative of a lack of credibility than lying on a material point, we believe, absent error in the inclusion of evidence, that a jury is entitled to consider *all* of a witness' testimony in determining credibility.

GARTH, Circuit Judge, concurring:

I agree with the result reached by the majority in this matter. This case essentially turns on a matter of credibility between Officer Weber and Rockwell as to whether Rockwell actually possessed a gun at the time of his arrest. This being so, the conflicting testimony between Weber and Mayor Foster regarding the circumstances surrounding the dropping of the state weapons charges bears heavily on Weber's overall credibility. In light of the central importance of Weber's credibility to the determination of Rockwell's guilt or innocence, I agree with the majority that the district court's charge effectively removed critical evidence from the jury. That evidence, i.e., the conflicting stories of Weber and the Mayor, was essential in the jury's performance of its ultimate function.

If the majority had reached that result without resorting to what I regard as an unnecessary and erroneous discussion of the collateral character of this evidence, I would have joined its opinion. The majority, however, did not do so, and it is at that point that I part company with its analysis. I do because of the effect that the majority opinion's gratuitous discussion may have on Rockwell's retrial.

In concluding that the district court's charge improperly withheld the Weber-Foster credibility evidence from jury consideration, the majority went on to discuss the character of the evidence respecting the dropping of the state weapons charges. The majority opinion depicts the evidence as wholly collateral to the issue of whether Rockwell actually possessed a firearm. To be sure, in some aspects that evidence may be collateral to the substantive issue of firearm possession, but in critical aspects it is assuredly not.

I do not regard the credibility issue that surfaced between Officer Weber and Mayor Foster as being in any way collateral to the issue of Rockwell's guilt or innocence. If the jury believed Mayor Foster that he had made no request or suggestion that charges be dropped, then Weber's testimony would be thoroughly suspect. Under a charge of *falsus in uno, falsus in omnibus,* the jury would then have been entitled to disbelieve part or all of Weber's testimony.

Thus, with respect to credibility, I do not understand how the "dropping of the state firearms charge" evidence could be regarded as collateral and therefore excludable from evidence. To the extent that the majority opinion is read as enabling the trial court to exclude such evidence at Rockwell's new trial, I believe the majority opinion is in error. If such testimony is offered at retrial and excluded, and if Rockwell is convicted, it appears to me that we will once again be called upon to reverse Rockwell's conviction.

I propose therefore that the majority's opinion can only be understood as characterizing the conflict in the "dropping of the state firearms charge" testimony as being collateral to the *substantive* charges for which Rockwell was standing trial, and not as being collateral to the credibility of Weber. Therefore, this testimony cannot properly be excluded for credibility purposes at Rockwell's retrial.

In addition, in my opinion, reversal is especially required here in light of the testimony which was inadvertently admitted during Officer Weber's direct examination. That testimony had to do with a statement made by Rockwell which was made in violation of his *Miranda* rights. *See* Maj.Op. at 986, n. 3. During direct examination, Officer Weber alluded to the fact that Rockwell had stated after his arrest, but before being advised of his right to remain silent, that Rockwell did not have a permit for the gun allegedly found in his possession. Thus Weber's testimony implied that Rockwell did in fact have a gun in his possession at that time. However, Rockwell's statement was made before Officer Weber administered the *Miranda* warnings, and therefore the government had agreed prior to trial that it would not offer that statement during trial. Officer Weber's inadvertent reference to Rockwell's statement went not only to the substantive issue of

possession, but also to bolster Weber's version of the incident.

Thus, the improper admission of this evidence, when added to the judge's charge which prevented the jury from considering the conflict in testimony between Weber and the Mayor, unfairly weighed the issue of credibility against Rockwell. Combined, these two errors, neither of which can be regarded as harmless, compel reversal for a new trial.