

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-1998

# Dressler v. Busch Ent Corp

Precedential or Non-Precedential:

Docket 96-2067

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Dressler v. Busch Ent Corp" (1998). *1998 Decisions*. Paper 104.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/104

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 11, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-2067

OLGA DRESSLER,
        Appellant

v.

BUSCH ENTERTAINMENT CORPORATION, D/B/A
SESAME PLACE; SESAME PLACE, A FICTITIOUS NAME
REGISTERED BY BUSCH ENTERTAINMENT
CORPORATION D/B/A/ SESAME PLACE; SESAME
PLACE; BUSCH ENTERTAINMENT CORPORATION, A
DIVISION OF ANHEUSER BUSCH, T/A SESAME PLACE;
BUSCH ENTERTAINMENT CORPORATION; CTW PARKS,
INC.; ANHEUSER-BUSCH, INCORPORATED,
        Appellees

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA
(Civil No. 95-cv-05274)

Argued: September 22, 1997

Before: Becker, Scirica, and McKee, Circuit Judges

(Filed May 11, 1998)

Anne E. Pedersen (Argued)
Sheller, Ludwig & Badey
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102

 Attorney for Appellant

Charles W. Craven (Argued)
Marshall, Dennehey, Warner,
 Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103

 Attorney for Appellees

OPINION OF THE COURT

McKee, Circuit Judge.

Olga Dressler appeals from the judgment of the district court in favor of defendant, Busch Entertainment Corp. Dressler sued Busch for injuries to her back that she maintains she sustained during a fall at an amusement theme park owned by Busch. She alleges that the trial court erred in instructing the jury, and in limiting her expert witness' testimony. For the reasons that follow, we agree that the trial court's jury instructions were erroneous, and will reverse the judgment and order of the district court and remand for a new trial.1

I.

On August 25, 1993, Olga Dressler and her son, Jason, visited Sesame Place, an amusement park in Langhorne, Pennsylvania that is owned by Busch Entertainment Corporation. Dressler purportedly injured her back as she

_____

1. Since we are granting a new trial, we need not address Dressler's assertions of error based upon the district court's restriction of her expert witness. Upon retrial, the issues of surprise and prejudice that are at the heart of the parties' arguments on that issue on appeal will be moot.

2

fell going down a step leading into a shallow pool that was part of an attraction known as the "Rubber Ducky Rapids." Thereafter, she underwent lumbar disc surgery in an effort to correct her back injury, and alleviate her pain. Dressler is a registered nurse, and claims that she is now unable to perform the duties of her profession because of back pain.

Dressler filed suit in the United States District Court for the Eastern District of Pennsylvania on August 17, 1995 to recover damages for the injury that she claims resulted from the fall. The matter was thereafter referred to a magistrate judge for trial. See 28 U.S.C. S 636(c).

Dressler maintained that she slipped and fell because she did not see a downward sloping step which was under water and painted blue -- the same color as the rest of the pool. At trial, Dressler testified that when she slipped and fell, her "left leg flew up," App. at 97, her back made "a very loud cracking noise" and she "could hear people gasping" at the sight of her. App. at 93-94. Mary Bellantoni, Dressler's friend, was the only eyewitness to the accident. She corroborated Dressler's testimony regarding a fall and further testified that Dressler was "in shock" and "crying hysterically" afterwards. App. at 307.

Dressler and Busch both presented expert testimony regarding the condition and design of the attraction, including the steps where Dressler fell. At the close of the evidence, Dressler requested that the trial court give the following jury instruction based upon a belief that the defense expert's testimony regarding the painting of the step was contradictory and contained willful falsifications:

> If you decide that a witness has deliberately falsified his testimony on a significatn [sic] point, you should take this into consideration in deciding whether or not to believe the rest of his testimony; and you may refuse to believe the rest of his testimony, but you are not required to do so.

App. at 35. See Pennsylvania Bar Institute, Pennsylvania Suggested Standard Jury Instructions (Civ.) 5.05 (1981). The trial court refused to give the requested instruction, and instead used different language to explain how to assess testimony. Since the language that the court used is at the

3

heart of this appeal, we quote the relevant portion of the court's charge at length:

[Y]ou must decide which testimony to believe and which testimony not to believe . . . . There are a number of factors you may take into account . . . including the following.

One, the witness' opportunity to observe the events he described . . . .
Two, the witness' intelligence and memory. Three, the witness' manner while testifying. Four, whether the witness has any interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case. And five, the reasonableness of the witness' testimony considered in light of all of the evidence in the case.

Again, ask yourselves if the witness' testimony makes sense to you . . . . Now if you find that a witness' testimony is contradicted by what the witness has said or done at another time, or by the testimony of other witnesses, you may disbelieve all or any part of that witness' testimony.

But in deciding whether or not to believe him or her, keep this in mind, people sometimes forget things. A contradiction may be an innocent lapse of memory or it may be an intentional falsehood. Consider, therefore, whether it has to do with an important fact or only a small detail. Different people observing an event may remember it differently and, therefore, testify about it differently.

You may consider the factors I have discussed in deciding how much weight to give to the testimony. It is for you to say what weight you will give to the testimony of any and all witnesses. If you believe that any witness has willfully sworn falsely to any material fact of this case or has willfully exaggerated any evidence in this case you are at liberty to disbelieve the testimony of that witness in whole or in part and believe it in part or disbelieve it in part, taking in to consideration all of the facts and circumstance of the case.

4

App. at 696-98 (emphasis added). Dressler promptly objected, arguing that the court's phrasing of the instruction improperly told the jury that it could disbelieve the testimony of a witness it believed "willfully exaggerated" any evidence (emphasis added). This, Dressler contended, was contrary to the standard instruction that she had submitted. App. at 714. The court overruled Dressler's objection and, following deliberations, the jury returned a verdict in favor of defendant Busch.

II.

Dressler's disagreement with the trial court's instruction is twofold. She argues 1) that the court erroneous ly included willful exaggeration in its charge on willful falsification; and 2) that the court did not limit its willful exaggeration charge to material evidence, but, instead, allowed the jury to reject all of a witness's testimony based upon any exaggeration, even if immaterial to the issues in the suit.

Our review of a trial court's jury instructions is plenary. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1212 (3d Cir. 1995). When we assess jury instructions we must look at the totality of the charge given to the jury, not merely a particular paragraph or sentence. See In re Braen, 900 F.2d 621, 626 (3d Cir. 1990) (citing United States v. Piccolo, 835 F.2d 517, 520 (3d Cir. 1987)). "We review jury instructions to determine whether, if taken as a whole, they properly apprised the jury of the issues and the applicable law." Tigg Corp. v. Dow Corning, Corp., 962 F.2d 1119, 1123 (3d Cir. 1992) (citing Gutzan v. Altair Airlines, Inc., 766 F.2d 135, 138 (3d Cir. 1985)). "`The trial court should be reversed only if the instruction was capable of confusing and thereby misleading the jury."' United States v. Rockwell, 781 F.2d 985, 991 (3d Cir. 1986) (quoting United States v. Fischbach and Moore, Inc., 750 F.2d 1183, 1195 (3d Cir. 1984)).

Busch argues that the totality of the portion of the charge set forth above properly informed the jury how to evaluate evidence. Busch cites our decision in Tigg to support its argument that the broad discretion that we afford trial courts in wording jury instructions requires us to defer to

5

the court's choice of language here. Appellee's Br. at 23;
Tigg, 962 F.2d at 1123-24.

In Tigg, plaintiff corporation sued the defendant
corporation alleging breach of a requirements contract for
an industrial product that Tigg was to supply to defendant.
The jury returned a verdict for defendant, and plaintiff
appealed alleging numerous errors in the court's jury
instructions. We reviewed the court's charge to determine if
it properly submitted the issues to the jury, and properly
explained the legal principles that would guide the jury's
analysis of the evidence. We reversed the judgment as to
damages because the court's charge gave the jury the
wrong test to use in determining damages. Here, despite
Busch's argument to the contrary, the court's instructions
gave the jury the wrong test to apply in deciding if a
witness' testimony should be rejected in whole or in part.

The terms "falsify" and "exaggerate" are not terms of art,
consequently, their ordinary and plain meanings are
sufficient to inform the jury. Webster's defines "falsify" as:
"to engage in misrepresentation or distortion." Webster's
Third New International Dictionary 820 (16th ed. 1981).
Accordingly, "falsify" suggests an intent to deceive or
mislead. On the other hand, "exaggerate" is defined as: "to
enlarge beyond bounds or the truth." Id. at 790.
Accordingly, the term includes an exclamation that
overstates a fact or occurrence because of the excitement of
the moment rather than bad faith. Dressler suggests that
that is exactly what may have happened here. She argues
that the excitement of the event may have caused both her
and her eyewitness, Mary Bellantoni, to overstate what
occurred. Dressler argues that the jury should not have
been authorized to reject the totality of either her and
Bellantoni's or any other witness' testimony based upon
such an exaggeration, unless the exaggeration concerned
testimony that was material to issues of liability or
damages.

Thus, testimony such as Bellantoni's statement that
Dressler went into shock or Dressler's statement that she
heard a "loud crack" did not justify rejecting all that either
witness said because that testimony, even if exaggerated,
was not relevant to the alleged negligent design of the steps

6

where Dressler fell. Busch, on the other hand, attempts to minimize any problem with the phrasing of the charge, arguing that the charge applied to its witnesses as well as Dressler's. Busch suggests that, since both sides may have exaggerated, Dressler cannot show any prejudice. Appellee's Br. at 24. However, that is not the point. When the jury is not informed of the test to apply to testimony, we cannot presume an absence of prejudice. Connecticut Mutual Life Insurance Co. v. Wyman, 718 F.2d 63, 64 (3d Cir. 1983).

Dressler argues that the standard jury charge of numerous jurisdictions that include what is known as the falsus in uno, falsus in omnibus charge include an element of bad faith and materiality. Appellant's Br. at 11-12. The falsus in omnibus instruction must clearly state that the evidence in question must be material, "although . . . the word `material' need not be included if the essential meaning is conveyed by equivalent language." (footnote omitted) 4 A.L.R. 2d 1077, S 10. As noted above, here, the court told the jury:

> If you believe that any witness has willfully sworn falsely to any material fact of this case or willfully exaggerated any evidence in this case you are at liberty to disbelieve the testimony of that witness in whole or in part and believe it in part or disbelieve it in part, taking into consideration all of the facts and circumstance of the case.

App. at 697-98. Thus, the jury could disbelieve a witness if it concluded that a witness deliberately testified falsely as to a "material fact". There is nothing wrong with this part of the equation as it is consistent with the longstanding principles of jury deliberation.2 However, the jury was also

_____

2. In United States v. Rockwell, 781 F.2d 985, 988 (3d Cir. 1986), we concluded that the trial court's instruction "encroached upon the prerogative of the jury to independently assess the credibility of witnesses," Id. at 991, when the court issued the standard falsus in omnibus instruction and then followed it with an instruction on collateral evidence. The court stated:

> If you find that any witness testified falsely about any material fact,
> you may disregard all of his testimony, or you may accept such

7

told that it could disbelieve a witness if the witness exaggerated about any evidence. We have never held that an exaggeration, even if willful, regarding something that is immaterial to a jury's deliberation, could justify allowing a jury to reject the totality of a witness' testimony, nor has Busch provided us with any authority from any other jurisdiction that would support such a sweeping principle of law.

Busch attempts to seize upon Dressler's citation to Hawaii's Civil Jury Instruction No. 5.3 to argue this novel principle. See Appellee's Br. at 22, n.4. Busch argues:

> the model jury instructions from Hawaii, cited by plaintiff . . . are almost identical to those given by the trial judge:
>
> You may reject the testimony of a witness if youfind . . . that: 1) the witness intentionally testified falsely . . . about any important fact; or 2)  the witness

_____

> parts of it as you wish to accept and excluded such parts of it as you wish to exclude . . . . It is not necessary in deciding this case to
> decide the issue of credibility between Mr. Foster and Mr. Weber. That issue is collateral to the main issue here.

Id. at 988. We thought that this instruction asked "the jury to reject or accept in whole or in part the testimony of a witness only if the witness had lied on a material issue. If a witness had not testified falsely about a material issue, the jury may have inferred that it was bound to accept the whole of the witness' testimony." Id. at 991. Further, we recalled our past approval of Professor Wigmore's words that "a person who would lie upon a collateral point is perhaps likely to be a more determined liar than one who dares it only upon a material point." Id. (quoting United States v. Rutkin, 189 F.2d 431, 439 (3d Cir. 1951) (internal citation omitted).

We consider Rockwell and Professor Wigmore's sage remarks, however, inapposite to our discussion on willful exaggeration. Since, as has previously been stated, "to exaggerate" is not the same as "to falsify" we do not think that Rockwell's admonition about the court's charge as it relates to willful falsification can be commuted to willful exaggeration. Indeed, since the act of exaggerating does not require bad faith, a jury should not necessarily apply the same standard to a witness who exaggerates as to one who falsifies, if the testimony is irrelevant.

8

intentionally exaggerated . . . an important fact . . . in order to deceive or mislead you.

Id. (internal quotation marks omitted) (emphasis added). However, the portions of Hawaii's instruction that we have underlined above clearly demonstrate the weakness in Busch's position. Far from being "almost identical" to the charge the district court gave here, the emphasized portions of the instruction are quite different. That difference substantially undermines Busch's position. A jury in Hawaii may disregard a witness who intentionally falsifies an important fact or who intentionally exaggerates an important fact. Clearly, a fact is only "important" if it is material. Here, the jury was told it could not reject the testimony of a witness who intentionally falsified testimony unless the falsification went to a material fact. However, the jury was allowed to reject the testimony of a witness who willfully exaggerated any fact no matter how immaterial it may have been.

Moreover, that error was not harmless. There were no witnesses to Dressler's purported fall other than Bellantoni and Dressler herself, both of whom testified in a manner that may have been considered somewhat exaggerated. In addition, no report of the accident was filed, as Dressler testified that she could not find any employee to assist her after her fall. Furthermore, Busch presented the testimony of an expert witness who testified that Dressler could not have slipped on the steps and fallen backward facing the pool as she testified. Thus, jurors had to decide whether or not they believed that Dressler had sustained her burden of establishing that she fell at defendant's amusement park in the first place before deciding any issues of negligence or liability. We cannot ignore the possibility that the jury may have improperly rejected the only testimony that could have established that Dressler fell.

Nor, are we persuaded to the contrary by Busch's reliance upon the rule that we must look at a charge in its entirety. Busch argues that, even if the challenged portion of the charge is problematic, the charge overall correctly informed the jurors of how to assess testimony, and when they could reject it. See Appellee's Br. at 20. We agree that much of what the court instructed, as set forth above, is a

9

correct statement of the law and was properly included in the judge's charge. However, we cannot agree that the failure to inform the jury that an exaggeration must be material was remedied by the remainder of the charge. Although the court's instructions are fairly exhaustive and largely correct, we cannot cast a blind eye on the court's clear misstatement regarding willful exaggeration. More importantly, we cannot expect the jury to do so. We cannot assume that the jury will have the wherewithal to heed that part of the instruction that is accurate and disregard that which is not. Rather, we must assume that if the jurors are provided instructions that are partly flawed they may well choose the flawed part to inform their duties asfinders of fact. Connecticut Mutual, 718 F.2d at 64. ("If the jury was misled as to the law on a material point, `we cannot presume that the jury applied the appropriate standard in deciding [an issue]' ").

Similarly, the deference that we give to the language trial courts use in charging a jury does not further Busch's position. The problem here is not, as Busch argues, the court's exercise of discretion to express the necessary principles and concepts in the language it deems most appropriate. Rather, the problem here is that the language the court did use allowed the jury to reject the testimony of a witness for reasons that may have been immaterial to a proper evaluation of the evidence. Deference to the language of a jury charge does not immunize jury instructions when they fail to advise, or misadvise, a jury of concepts it needs to know to properly discharge its duties.

Thus, we hold that the district court erred in allowing jurors to reject part or all of a witness' testimony merely because of a willful exaggeration of a circumstance that was not material to Busch's negligence, or any damages Dressler sustained.

III.

For the foregoing reasons, we reverse the judgment and order of the district court and remand for a new trial.

10

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit