NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2009
No. 11-2066
_____

BONNIE MARCUS; ROMAN WYPART;
ERNEST SENDEROV; MARY ELLEN CALLAGHAN

v.

PQ CORPORATION,
            Appellant in 11-2009

BONNIE MARCUS; ROMAN WYPART;
ERNEST SENDEROV; MARY ELLEN CALLAGHAN,

v.

PQ CORPORATION,

                Bonnie Marcus,
                Roman Wypart,
                    Appellants in 11-2066
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cv-02075)
District Judge:  Honorable John P. Fullam
_____

Argued December 6, 2011
Before: HARDIMAN, BARRY, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: January 19, 2012)

Scott B. Goldshaw [Argued]
Katie R. Eyer
Salmanson Goldshaw
1500 John F. Kennedy Boulevard

Two Penn Center, Suite 1230
Philadelphia, PA 19102-0000
        *Attorneys for Plaintiff-Appellee, Bonnie Marcus*
        *Attorneys for Plaintiff-Non-Participating, Mary Ellen Callaghan, and*
        *Ernest Senderov*
        *Attorneys for Plaintiff-Appellee, Roman Wypart*


Peter J. Ennis
Buchanan Ingersoll & Rooney
301 Grant Street
One Oxford Centre, 20th Floor
Pittsburgh, PA 15219-0000

Elizabeth A. Malloy [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555
        *Attorneys for Defendant-Appellant*

James M. Tucker
Equal Employment Opportunity Commission
5NW10P
131 M Street, N.E.
Washington, DC 20507
        *Attorneys for Not Party-Amicus Appellee, EEOC*

———————

OPINION OF THE COURT
———————

HARDIMAN, *Circuit Judge*.

Bonnie Marcus and Roman Wypart (collectively, Plaintiffs) sued their former

employer, PQ Corporation (PQ), for violating the Age Discrimination in Employment

Act (ADEA) of 1967, 29 U.S.C. §§ 621–634. A jury ruled in Plaintiffs' favor, awarding

2

substantial damages that were remitted by the District Court. PQ appeals the judgment, claiming it is entitled to either judgment as a matter of law or a new trial. Plaintiffs filed a cross-appeal challenging the District Court's denial of their post-verdict motion to mold the judgment to incorporate prejudgment interest and to account for negative tax consequences.

## I

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

## A

Plaintiffs worked for PQ, a chemicals company, when it was purchased in February 2005. Following the acquisition, new CEO Mike Boyce implemented a reduction in force (RIF) with the help of several PQ managers, including John Lau, Michael Imbriani, Rosalyn Kutchins, and Colleen DelMonte. Lau was Marcus's boss, who was in turn Wypart's supervisor. Thirty employees were laid off in May 2005, eight of whom (including Plaintiffs) worked in the Research and Development Department (R&D). The Corporate Development Program (CDP) funded certain projects in R&D.

## B

Plaintiffs and two other former employees sued PQ for age discrimination under the ADEA and state law. Because the first jury could not agree on a verdict as to Plaintiffs, the case was tried a second time. After a seven-day trial, the jury returned a verdict in their favor, awarding Marcus $1,335,806 in lost wages and $1,500,000 in

3

emotional distress damages, and awarding Wypart $566,636 in lost wages and $2,000,000 for his emotional distress. The District Court entered a corresponding judgment.

Plaintiffs moved to amend the judgment to include liquidated damages and later to mold the verdict to include prejudgment interest and to account for negative tax consequences. PQ moved for judgment as a matter of law, a new trial, or remittitur. The District Court granted Plaintiffs' motion to amend, denied their motion to mold, and granted in part and denied in part PQ's motion. Specifically, the District Court found that the emotional distress damages "shock[] the conscience," and offered a remittitur of $50,000 to Marcus and $100,000 to Wypart, but it denied the motion in all other respects. Plaintiffs accepted the remittitur and the parties timely filed notices of appeal.[1]

II

PQ challenges the jury instructions, the sufficiency of the evidence, and the impartiality of the jury. "We review the District Court's refusal to give specific jury instructions for abuse of discretion, but exercise plenary review over whether the District Court gave a correct statement of law in its jury instructions."[2] *United States v.*

---

[1] The District Court had jurisdiction over the ADEA claim under 28 U.S.C. § 1331 and over the state-law claim pursuant to 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

[2] Plaintiffs claim most of the jury instructions are reviewable only for plain error because PQ did not object to them. Because the District Court deviated from Federal Rule of Civil Procedure 51, we are not persuaded that such limited review would be

*Friedman*, 658 F.3d 342, 352 (3d Cir. 2011) (citing *United States v. Jimenez*, 513 F.3d 62, 74 (3d Cir. 2008)). We scrutinize the denial of a motion for judgment as a matter of law *de novo*, viewing the evidence in the light most favorable to the prevailing party. *McKenna v. City of Phila.*, 649 F.3d 171, 176 (3d Cir. 2011). Finally, we review for abuse of discretion the decision not to grant a new trial requested because of jury passion and prejudice. *Evans v. Port Auth.*, 273 F.3d 346, 351–52 (3d Cir. 2001).

## A

In examining any jury instruction, "[w]e must determine whether, taken as a whole, the instruction properly apprised the jury of the issues and the applicable law." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 (3d Cir. 2009) (citing *Dressler v. Busch Entm't Corp.*, 143 F.3d 778, 780 (3d Cir. 1998)). "[A] mistake in a jury instruction constitutes reversible error only if it fails to 'fairly and adequately' present the issues in the case without confusing or misleading the jury." *Id.* at 79 (quoting *United States v. Ellis*, 156 F.3d 493, 498 n.7 (3d Cir. 1998)). "The trial judge is permitted considerable latitude to summarize and comment upon the evidence, provided that the jury is neither confused nor misled." *Id.* (citing *Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 327 (3d Cir. 1985)).

---

appropriate. In any event, the distinction is immaterial because PQ's arguments all fail under the more liberal plenary standard.

PQ first asserts that the jury instructions did not accurately convey the "but-for" causation requirement of the ADEA as set forth in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009). In *Gross*, the Supreme Court held that

> a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

129 S. Ct. at 2352.

The jury instructions at issue on appeal undoubtedly captured this burden. The District Court's instructions mentioned "but-for" or "because of" no fewer than four times. At other points in the instructions, the District Court properly explained that age must have been a "decisive" or "determinative" factor in the decision to terminate Plaintiffs, verbiage that expresses but-for causation. Additionally, the verdict slip asked the jury whether "age was a 'but for' cause of PQ's decision." While some language in the instructions, read in isolation, strayed from the stringent but-for standard, we will not reverse unless the instructions as a whole fail to correctly state the burden of proof. Read together, these instructions were not deficient.

Next, PQ contends that following the Supreme Court's decisions in *Gross* and *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), the District Court should not have

delivered a "cat's paw"[3] instruction in an ADEA case.[4] Before *Staub*, we allowed a plaintiff to pursue an ADEA claim under a cat's paw theory. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995); *see Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 285–86 (3d Cir. 2001) (citing *Abrams*, 50 F.3d at 1214) ("Under our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate."). *Staub* has not disturbed that precedent.

In *Staub*, the plaintiff sued his former employer under the Uniformed Services Employment and Reemployment Rights Act (USERRA) of 1994, 38 U.S.C. §§ 4301–4335, on a cat's paw theory. The Supreme Court evaluated the theory with traditional tort-law concepts of proximate cause, observing that "the ultimate decisionmaker's exercise of judgment [does not] automatically render[] the link to the supervisor's bias 'remote' or 'purely contingent.' The decisionmaker's exercise of judgment is *also* a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes." 131 S. Ct. at 1192 (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 704 (2004)). The Court held: "[I]f a supervisor performs an act motivated by

---

[3] A "cat's paw" or "subordinate bias" theory of liability is "one in which [the plaintiff seeks] to hold his employer liable for the animus of a nondecisionmaker." *McKenna*, 649 F.3d at 177–78 & n.6; *accord Staub*, 131 S. Ct. at 1190 & n.1.

[4] Plaintiffs dispute whether the cat's paw instruction was given. We think it was. Following a sidebar during the jury instructions in which Plaintiffs' counsel requested a cat's paw instruction, the Court told the jury: "[I]f you conclude that an employee who's had a role in the final decision to terminate the plaintiffs, was shown to have been inclined to discriminate on the basis of age, that would be an important factor to

antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Id.* at 1194 (footnote omitted).

We do not understand *Staub* to bar the application of a cat's paw theory in an ADEA case. Although USERRA imposes a more lenient causation requirement than does the ADEA,[5] *Staub* is a case about proximate cause as it relates to principles of agency and vicarious liability. To have a viable claim under either statute using a cat's paw theory, a plaintiff must surmount both the causation and vicarious liability hurdles. This will be more difficult in an ADEA case than in a case arising under USERRA or Title VII, but that is because of *Gross*, not *Staub*. Simply put, "the underlying principles of agency upon which subordinate bias theories are based apply equally to all types of employment discrimination." *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 949–50 (10th Cir. 2011) (noting that an ADEA plaintiff may rely on a subordinate bias theory after *Staub*). Given that Plaintiffs argued to the jury that DelMonte, Kutchins, and Imbriani took actions to induce Boyce to terminate them, the cat's paw instruction was proper.

---

consider." Given the evidence presented, we believe the jury would have understood this instruction to empower it to hold PQ liable on a theory of subordinate bias.

[5] "Unlike Title VII and the USERRA, 'the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor,' the operative phrase relied upon in *Staub*." *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 949 (10th Cir. 2011) (quoting *Gross*, 129 S. Ct. at 2349).

PQ also asserts that the District Court should have given a business-judgment instruction. We find this argument unpersuasive because the District Court twice told the jury that PQ had the legal right to make certain business decisions. In particular, the District Court instructed that it was "perfectly legal for an employer . . . to decide to shake up the personnel" and that "the defendant had a right to hire and fire its employees whenever they [sic] wanted to, as long as they [sic] didn't do it because of age." This language sufficed to inform the jury that it could not hold PQ liable simply because it disagreed with PQ's decision to fire Plaintiffs, which is the essence of any business-judgment charge. PQ was not entitled to any particular language, so long as the instruction correctly described the law, and it did so here.

Finally, PQ takes issue with the impartiality of the District Court. Having reviewed the instructions and PQ's various objections, we find that none were unduly prejudicial. District courts have substantial latitude to comment on the evidence to assist the jury. Here, none of the District Court's statements undermined the jury's duty to weigh the evidence. *See United States v. Olgin*, 745 F.2d 263, 268–69 (3d Cir. 1984) (discussing the factors that inform whether a charging remark is unduly influential).

For the reasons stated, PQ's challenges to the jury instructions are without merit.

B

PQ next contends that the District Court erred in denying its motion for judgment as a matter of law. We are unpersuaded because Plaintiffs introduced considerable evidence from which the jury could infer discrimination. *See Smith v. City of Allentown*,

589 F.3d 684, 689–91 (3d Cir. 2009) (describing the burden-shifting framework of an ADEA claim). For example, Plaintiffs showed how PQ's proffered reason for the terminations changed over time. They also introduced evidence that, of the employees who held the same title as Plaintiffs, all of those fifty-five and older were fired in the RIF while all of those under fifty-five were retained. They proffered expert testimony that this pattern was statistically significant, even when controlling for PQ's business explanations. Moreover, Marcus testified that Lau told her before the RIF that older employees would be its focus. Finally, Plaintiffs presented circumstantial evidence of ageism at PQ in the form of verbal comments made by Kutchins and Imbriani.

Although PQ is correct that the jury could have devalued this evidence in favor of PQ's nondiscriminatory justification, the jury was not required to do so. The evidence presented was more than sufficient to support an inference of age discrimination, and the motion for judgment as a matter of law was appropriately denied.

C

PQ's final argument on appeal is that the jury made a substantial award of emotional distress damages in the absence of serious harm. According to PQ, this shows that the jury acted out of passion and prejudice, which would entitle it to a new trial.

"A new trial is warranted based 'upon [a] showing that the jury verdict resulted from passion or prejudice.'" *Evans*, 273 F.3d at 352 (alteration in original) (quoting *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 114 (3d Cir. 1999)) (internal quotation marks omitted). However, the "size of the award alone [is not] enough to prove prejudice

10

and passion." *Id.* (alteration in original) (internal quotation marks omitted). If the award is excessive, but did not result from passion or prejudice, remittitur (like the one granted here) is the proper remedy. *See Hurley*, 174 F.3d at 114.[6]

PQ argues that in addition to the size of the award, the errors in the jury instructions and the fact that the jury deliberated for less than three hours prove passion and prejudice. The first contention is unpersuasive because the instructions were not erroneous. *See Evans*, 273 F.3d at 352 ("Because we have rejected the allegations of error upon which the Port Authority bases its impartiality argument, we reject as well the Port Authority's argument that the alleged errors tainted the jury's verdict."). Nor does the length of the deliberation here show passion and prejudice. Three hours was not insufficient for the jury to reach a reasoned decision. *See Paoletto v. Beech Aircraft Corp.*, 464 F.2d 976, 983 (3d Cir. 1972) ("[T]he brevity with which a jury reaches its verdict does not, standing alone, substantiate a claim of capriciousness, even where the total time of deliberation is substantially less than the [40 minutes the] jury required in this case."); *see also Wilburn v. Eastman Kodak Co.*, 180 F.3d 475, 476 (2d Cir. 1999) (per curiam) ("A jury is not required to deliberate for any set length of time. Brief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence.").

---

[6] PQ asks us to distinguish the present case because the jury's award is compensatory, and not punitive like the award in *Hurley*. *Evans* forecloses this distinction because that case involved a compensatory award and applied the same rule nonetheless. *See* 273 F.3d at 351–52.

For the reasons stated, we reject PQ's claims of error.

III

Plaintiffs' cross-appeal presents two issues, both of which relate to the District Court's refusal to mold the verdict. We review the District Court's denial of prejudgment interest and refusal to modify the verdict to reflect tax consequences for abuse of discretion. *Pignataro v. Port Auth.*, 593 F.3d 265, 273 (3d Cir. 2010) (citing *Thabault v. Chait*, 541 F.3d 512, 533 (3d Cir. 2008)) (prejudgment interest); *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 443 (3d Cir. 2009) (tax consequences).

"'[I]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law is committed to the trial court's discretion' and should be awarded based on considerations of fairness." *Pignataro*, 593 F.3d at 273–74 (alteration in original) (quoting *Brock v. Richardson*, 812 F.2d 121, 126 (3d Cir. 1987)). Because they usually serve to make a plaintiff whole, we "favor[] permitting prejudgment interest awards," *William A. Graham Co. v. Haughey*, 646 F.3d 138, 144 (3d Cir. 2011) (emphasis removed), and therefore generally apply "a strong presumption in favor of awarding prejudgment interest," *Booker v. Taylor Milk Co.*, 64 F.3d 860, 868 (3d Cir. 1995). An abuse of discretion occurs when a district court deviates from this policy without a reasoned explanation. *See Pignataro*, 593 F.3d at 274 ("If prejudgment interest is denied, the District Court must explain why the usual equities in favor of such interest are not applicable."); *Booker*, 64 F.3d at 868 ("[A] district court may exercise its

discretion to depart from this presumption only when it provides a justification that reasonably supports the departure.").

Similar principles inform the tax-consequences analysis:

[A]n award to compensate a prevailing employee for her increased tax burden as a result of a lump sum award will, in the appropriate case, help to make a victim whole. This type of an award, as with prejudgment interest, represents a recognition that the harm to a prevailing employee's pecuniary interest may be broader in scope than just a loss of back pay. Accordingly, either or both types of equitable relief may be necessary to achieve complete restoration of the prevailing employee's economic status quo and to assure "the most complete relief possible."

*Eshelman*, 554 F.3d at 442 (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 465 (1986)). But there is no presumption in favor of an adjustment for negative tax consequences. *Id.* at 443 (stating that district courts "should grant relief 'in light of the circumstances peculiar to the case'" (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424 (1975))).

The District Court's only explanation for the denial of prejudgment interest, in a single sentence, was that the liquidated damages provision of the ADEA is sufficient to compensate Plaintiffs. Yet we have held that prejudgment interest may be awarded in an ADEA case involving a willful violation, reasoning that the punitive award of liquidated damages serves a different purpose than, and therefore does not preclude, the compensatory award of prejudgment interest. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101–03 (3d Cir. 1995). Thus, although the District Court did not explicitly hold that it could not award prejudgment interest, it failed to recognize the presumption

13

in favor of prejudgment interest and offer a valid reason for departing from it. Consequently, the District Court's "decision rests upon . . . an errant conclusion of law." *EEOC v. Kronos Inc.*, 620 F.3d 287, 296 (3d Cir. 2010) (internal quotation marks omitted). We reach a similar conclusion with respect to the issue of negative tax consequences, even though there is no presumption in favor of an adjustment to account for them, because the District Court did not acknowledge the differing interests in compensation and punishment.

IV

For the foregoing reasons, we will affirm the District Court's March 23, 2011 judgment, we will vacate in part the District Court's February 17, 2011 order to the extent that it denies a modification of the judgment to incorporate prejudgment interest and to account for negative tax consequences, and we will remand the case so that the District Court may consider Plaintiffs' arguments under the correct legal standard.